

*1111-15*

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

CASE NO. PD-1111-15

IN THE "COURT OF

CRIMINAL APPEALS OF TEXAS"

)

CRISTOPHER DANIEL MARQUEZ, Appellant

VS

THE STATE OF TEXAS, Appellee

FILED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

From the 118th District Court of Howard County, Texas, Cause No.
13644 and the Eleventh Court of Appeals No. 11-13-00192-CR

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PETITIION FOR DISCRETIONARY REIEW

CHRISTOPHER DANIEL MARQUEZ
TDCJ NO. 1865294 Appellant Pro se
Telford Unit
3899 State Highway 98
New Boston, Texas 75570

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

1. The Hon. Timothy Yeats
   Judge of the 118th District Court
   P.O. Box 528
   Big Spring, TX 79721

2. The Hon. Hardy Wilkerson
   118th District Attorney
   P.O. Drawer 149
   Big Spring, TX. 79721

3. Wayne Frost
   Trial Counsel
   203 W. Well
   Suite 205
   Midland, TX 79701

4. Amos W. (Trey) Keith, III
   Counsel for Appellant
   P.O. Box 37
   Sweetwater, TX 79556

5. Lisa C. McMinn
   State Prosecuting Attorney
   209 W. 14th St. Rm. 202
   Capitol Station, Austin, TX 78711

6. Christopher Daniel Marquez
   Appellant
   TDCJ #01865294
   Barry B. Telford Unit
   3899 State Highway 98
   New Boston, TX 75570

*Note: Petitioner has had mail returned to sender at the Two P.O. Box numbers listed for the State Prosecuting Attorney P.O. Box 13046 and 12405, Austin, TX 78711-3406 and 78711- 2308.

ii.

# TABLE OF CONTENTS

Identity of Judge, Parties, and Counsel............... ii

Table of Contents ...................................... iii

Index of Authorities ................................. iv

Statement Regarding Oral Argument ..................... 1

Statement of the Case ................................. 1

Statement of Procedural History ...................... 2

Ground One for Review ................................ 2

THE ELEVENTH COURT OF APPEALS, AT EASTLAND, TEXAS
ERRED IN FINDING THAT THE EVIDENCE WAS LEGALLY
SUFFICIENT TO SUSTAIN THE VERDICT OF GUILTY ON
COUNT II (MURDER), BECAUSE NO RATIONAL TRIER OF
FACT COULD HAVE FOUND BEYOND A REASONABLE DOUBT
THAT APPELLANT INTENDED TO CAUSE SERIOUS BODILY
INJURY TO LUIS ADOLFO PENA, JR., SINCE THERE IS
ONLY A MODICUM OF EVIDENCE THAT PENA WAS AN
INTENDED VICTIM

Argument .............................................2-14

Prayer for Relief ................................... 15

Certificate of Service .............................. 15

Appendix

# INDEX OF AUTHORTIES

CASES

Brooks v State, 323 S.W. 3d 893, 899
(Tex. Cr. App. 2010)     3

Brown v State, 381 S.W. 3d 565, 573
(Tex. App. - Eastland 2012, no pet)     3

Gear v State, 340 S.W. 3d 743, 746
(Tex. Cr. App. 2011)     3

Isassi v State, 330 S.W. 3d 633, 639
(Tex. Cr. App. 2010)     2, 3, 14

Jackson v Virginia, 443 U.S. 307, 99 S.Ct. 2781,
61 L. Ed. 2d 550 (1979)     2, 3, 14

Tibbs v Florida, 457 U.S. 31, 41
(1982)     2, 3, 14

# IN THE COURT OF

# CRIMINAL APPEALS OF TEXAS

---

CHRISTOPHER DANIEL MARQUEZ, Appellant

VS

THE STATE OF TEXAS, Appellee

---

## PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW CHRISTOPHER DANIEL MARQUEZ, appellant in pro se, and respectfully submits this Petition for Discretionary Review.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes the issue presented can be determined upon written briefs and authorities presented and does not request oral argument in this case.

## STATEMENT OF THE CASE

In a single, three-count indictment, Appellant was accused of Aggravated Assault, Murder, and Unlawful Possession of a Firearm by a Felon. (Reporters Record Volume 5, pages 105-108, hereafter for example RR 5 ps 105-108) Appellant pleaded "not guilty" to all counts. (RR 7 p 153) Appellant was sentenced by the Judge who assessed concurrent terms of incarceration of fifteen years, forty years, and ten years in Counts I-III, respectively. (RR 8 p 13) Appellant appeals his conviction in Count II murder and forty years.

1

## STATEMENT OF PROCEDURAL HISTORY

(1) The opinion of the Eleventh Court of Appeals was handed down on July 31, 2015 by Memorandum Opinion. (see Appendix with opinion attached)

(2) There was no motion for rehearing filed in the Eleventh Court of Appeals.

(3) The case was disposed of in the Eleventh Court of Appeals by Memorandum Opinion on July 31, 2015 without any rehearing or rehearing enbanc. There is nothing pending so Petition is appropriate.

## GROUND ONE FOR REVIEW

THE ELEVENTH COURT OF APPEALS, AT EASTLAND, TEXAS ERRED IN FINDING THAT THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUSTAIN THE VERDICT OF GUILTY ON COUNT II (MURDER), BECAUSE NO RATIONAL TRIER OF FACT COULD HAVE FOUND BEYOND A REASONABLE DOUBT THAT APPELLANT INTENDED TO CAUSE SERIOUS BODILY INJURY TO LUIS ADOLFO PENA, JR., SINCE THERE IS ONLY A MODICUM OF EVIDENCE THAT PENA WAS AN INTENDED VICTIM.

The Court of Appeals decided an important question of State and Federal law in a way that conflicts with the applicable decisions in the United States Supreme Court, namely Jackson v Virginia, 443 U.S. 307, 309 (1979) and the Court of Criminal Appeals, namely Isassi v State, 330 S.W. 3d 633, 638 (Tex. Cr. App. 2010)

## ARGUMENT

This Honorable Court applies Jackson v Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L. Ed. 2d 550 (1979) as the standard for reviewing sufficiency of evidence. "In determining whether the evidence is legally sufficient to support a conviction, a reviewing Court must consider all of the evidence in the light most favorable to the verdict and determine whether based on the

2

evidence and reaonable inferences there from, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also Gear v State, 340 S.W. 3d 743, 746 (Tex. Cr. App. 2011)(citing Jackson,v Virginia, 443 U.S. at 318-19) This Honorable Court in Brooks v State, 323 S.W. 3d 893, 899 (Tex. Cr. App.2010) determined that when viewing the evidence in the light most favorable to the verdict, "the reviewing Court is required to defer to the jury's credibility and the weight determinations because the jury is the sole judge of the witnesses credibility and the weight to be given their testimony." Brooks, 323 S.W. 3d at899, (citing Jackson, supra at 319 and 326.) Evidence is insufficient under this standard in four circumstances, (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence;probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. Jackson, 443 U.S. at 314, 318 n. 11, 320; Brown v State, 381 S.W. 3d 565, 573 (Tex. App. Eastland 2012, no pet); see also Isassi v State, 330 S.W. 3d 633, 638 (Tex. Cr. App. 2010)(citing Jackson v Virginia, 443 U.S. at 319-20)

If an appellate court finds that evidence insufficient under this standard, it must revers the judgment and enter and order of acquittal. see Tibbs v Florida, 457 U.S. 31, 41 , 102 S. Ct. 2211, 72 L.Ed. 2d 652 (1982)

3

Appellant was indicted in Count II (Murder) in the following language, (Clerk's Record at 7, hereafter CR 7) :

II.

CHRISTOPHER DANIEL MARQUEZ, on or about the 27th day of October, 2012, and anterior to the presentment of this indictment, in the County of Howard and State of Texas, did then and there, with intent to cause serious bodily injury to an individual, namely Luis Adolfo Pena Jr., commit an act clearly dangerous to human life that caused the death of said Luis Adolfo Pena Jr., by shooting him in the head with a handgun, and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault.

The relevant evidence established that: Late October 26, 2012 a Halloween party was in progress at the VFW in Howard County, TExas. (Reporters Record Volume 6, pages 20-21, 72, hereafter as example, RR 6 ps 20-21, 72) At around 2:15 am on October 27, 2012, Raul Mendez initiated a fight by going over to Appellant's brother, Ramiro Cleo Marquez, hereafter referred to as Cleo, and having words with him and punching him first, because of what essentially was a dispute over a woman. (RR 6, ps 21-23, 152) Three other males came to the aid of Cleo, but Appellant Christopher Marquez, hereafter Chris, hit Raul Mendez so hard he dropped to the floor. (RR 6 ps 23, 24; see Exhibit 56 Video Chris admits to dropping Raul Mendez; and Exhibit 62 letter by Chris stating "he cocked it back all the way to Arkansas and dropped the guy.", RR 7 p 150 State injecting into final closing argument)

4

Raul Mendez, hereafter refered to as Raul, chased the four combatants outside into the parking area (RR 6 ps 23,24), where a shooter aimed a firearm at Mendez, and fired at least two rounds, striking Raul twice. (RR 6 ps 29-30, 56). Another man, Luis Adolfo Pena Jr., hereafter Luis, was struck in the head by a bullet, which caused his death. The bullet that caused Luis death was of a small caliber, consistent with the injuries observed in Raul. (RR 5 p 139)

Two witnesses- Cynthia Trevino, hereafter refered to as Cynthia, and Raul gavetestimony which established that the shooting was precipitated by a two-sided dispute between Raul and Cleo and that Chris joined the dispute against Raul. (RR 6 152-153) The testimony of Cynthia and Raul identified Chris as the person who shot Raul, and their testimony further established that Chris intended to shoot Raul, because Cynthia and Raul both saw Chris aim the gun at Raul and shoot him twice. (RR 6 26, 29, 155-156)

Another witness, Michael Vanderbilt, hereafter refered to as Michael, testified that he saw a gun, but he could not identify the person who was holding the gun. Michael gave an inconsistent testimony regarding what he had seen. He testified that he saw a gun, and that he imediately turned away. (RR 6 p 93) He testified that he did not see Luis outside the VFW until after Luis had been shot. (RR 6 p 96) HOwever, Michaelacknowledged that he had signed a statement, in which hedescribed the shooter as having pointed a gun at both RAul and Luis. (RR 6 p 119).

5

No witness saw Chris fire a weapon at Luis. No witness saw Luis get shot.

The Court's Charge on Count II contained no instruction regarding "transferred intent" or "self defense." (RR 7 97-98)

Because a sufficiency analysis is fact-intensive and case specific, Appellant Christopher DAniel Marquez, hereafter again referred to as Chris presents the following survey of the relevant testimony.

Cynthia testified that the decedent was her boyfriend; she had been dating Luis since about August 2012. (RR 6 10) On the evening of October 26, 2012 Cynthia and Luis went to a couple of bars to celebrate the finalization of her divorce. (RR 6, p 11) Sometime after 2:00 am, Cynthia and Luis went to the VFW, where they were joined by Felicia CAnales and David MOrales, hereafter refered to as David Sr. Immediately after, Raul and his girlfriend Anel arrived. (RR 6 ps 19,20)

A Halloween party was in progress at the VFW, complete with a DJ, alcoholic beverages, and dancing. (RR 6 ps 20-21, 72) After getting some drinks and proceeding to the dance area (RR 6 ps 20,21), Cynthia noticed that Raul was looking across to the other side of the room, making eye contact with Chris's brother Cleo. Raul and Cleo were staring at each other, "staring each other down because of Anel". (RR 6 ps 21,22) Cynthia explained that "Anel" (who arrived with Raul) was a former girlfriend of Cleo. Raul went across the room "toconfront Cleo, and they just started fighting". (RR 6 p 23) They were "throwing fists at each other." (RR 6 p 23)

6₆

The fight was joined by Chris, David Morales Jr. hereafter refered to as David Jr., and a third person, all three of whom were assisting Cleo. (RR 6 ps 23,24) Cynthia testified that several people intervened to break up the fight, including herself and Luis. The fight was stopped, and Cleo ran outside, along with the others. Raul ran after them. (RR 6 p 24). "Everybody" ran outside, including Cynthia, who was trying to stop everything". (RR 6 p 25). Luis ran outside, behind Cynthia. (RR 6 p 25) Later testimony by Raul Mendez and Michael Vanderbilt stated that they did not see Cynthia ,Luis, or anyone else until after the shooting. No one was seen coming behind Raul or Michael until Raul saw Cynthia by Luis and Anel picked him up, after the shooting. (RR 6 99-100; RR 6 155-156, 168, 177)

Cynthia described the events that followed: "Raul chases them outside, andI run after Raul. Luis kind of stayed behind. And when Raul got to the back of their car (a white cadillac), there was the first shot. (RR 6 p 26). And we both ducked down behind the car." (RR 6 p 26) "And when [Raul] tries to make a run for it, he was shot again in the back." (RR 6, p 26)

Cynthia identified Chris as the person who shot Raul: " when me and Raul ran up to the car, I seen [Chris] go to the back door of that Cadillac on the driver's side and pull out that gun and point it at Raul". (RR 6 ps 29, 56) Cynthia saw the gun discharge at Raul. (RR 6 ps 29-30,56)  However, on Cross examination she describes Chris as pointing his right arm and gun in his right hand straight out. And Cleo in the drivers seat behind the wheel. (RR 6 65-66)

7

This testimony by Cynthia TRevino was in spite of the fact that Christopher Daniel Marquez, the appellant in this instant case, has been left handed all his life and even signed his waiver of Miranda on the video lefthanded. (see RR 7 ps 26-30 Exhibits 56 and 57 the video showing Chris signing the miranda warnings left handed and the actual miranda document signed by Chris and Ranger Hanna as a witness; and testimony from Chris's mother Felicia Valencia that Chris is left handed, RR 7 ps 74-75) Also there is ample testimony that Christopher DAniel Marquez, the Appellant in this instant cause is a small and short man, from about 5 ft. to reaching to estmate 5 ft. 5 inches in the testimony of Raul Mendez and Ranger Hanna. (RR 6 p 166, RR 7 p 34 states 5'7" 150 to 160 lbs and is impeached by Chris standing up in court romm and then Ranger Hanna changes his testimony to about 5'5", see RR 7 p 35) Cynthia continued to testify that when Raul whnt down from the first shot she went down and on her butt she scooted back across the parking lot. (RR 6 26-27, 57-58) Cynthia testified that "as I watch Raul go down, I hear another shot to my right, and then a car takes off. The white cadillac takes off, and I seen someone fall to the ground. ANd as the car leaves and I run across the parking lot , I lean over, and I seen that it was [Luis]." (RR 6 p 27) Cynthia did not see whther Chris fired in the direction of Luis pena." (RR 6, p 30) Cynthia was asked whether Pena knew the Marquezs, (Chris and Cleo)and she answered, "No, I don't think so". (RR 6 p 35)

8

Michael Vanderbilt, hereafter refered to as Michael, was outside the VFW when he saw "four or five HIspanic males come running outside, and RAul Mendez was after them.." (RR 6 p 117)

> I seen RAul. I seen a group of other people run out. I seen Raul run out behind them. So my first intincts was to go and check on Raul to see what was going on with him. ONce I got out of the car, there was a van parked in front of the white car that they say that the people that did the shooting were in. Once I got around the van, the only thing I seen was a gun. When I seen the gun, I turned right back a split second. It was dark out there. A split second. I turned right back around, heard gun shots, hit the ground, heard a car spin off and got up." (RR 6 p 93)

The defense attorney later asked, "And did you see Luis out there any where before you saw him laying on the ground.?" VAnderbilt replied, "No. I had seen Luis probably about approximately an hour and a half before that at another bar, which he was having a good time..And I didn't even know that Luis was out there until it was all over with." (RR 6 p 96) The defense attorney later asked Michael VAnderbilt, hereafter, Michael, "Was anyone with Raul?", to which Michael responded, "Not that I can recall. I mean, after the fact, it was just supposed to be Mr. Pena." (RR 6 p 100)

The prosecutor asked Michael, "So you saw him point the gun at [Pena and Mendez] Luis and RAul? and Michael replied "No, I didn't". (RR 6 p 119). The prosecutor further questioned Michael by reading a portion of his written statement (signed November 29th); "As I ran around the CAdillac, I saw a Hispanic male pointing a .22 - a black .22 revolver toward Raul and Luis Pena". The prosecutor asked "is that accurate?" Michael Vanderbilt answered, "Yes. I mean, Raul Mendez and Pena, those were the dudes they were fighting.

Of course, it was them he was pointing the gun to". (RR 6 p 119)

Raul Mendez, hereafter refered to as RAul, testified that he arrived at the VFW with Anel Salas sometime after 2:00 am on October 27, 2012. (RR 6 p 143, 147). After 10 or 15 minutes, according to Raul, a group of males arrive, comprised of Cleo, Chris, and two others unknown to RAul. (RR 6 148-150) Raul crossed the room to confront Cleo. "So me and him had words, and I threw a punch.. When I threw the first punch and me and him started fighting, [the other two guys and Chris got in]". (RR 6, 152-153) The scuffle did not last long. RAul fell to the ground, but he got up quickly, and he saw the other four conbatants running out. Raul chased them outside to a car, and Cleo ran to the passenger side of that car.. Raul did not know that anyone had gone outside behind him. RAul did not know where luis Pena was. (RR 6, 168, 185) RAul ran to the passenger side of the car to settle his issues with Cleo" but Cleo ran around to the other side.. That's when I turned and looked, and I had a gun pointed at me and I got shot". (RR 6 153-154). Appellant Chris, was holding the gun. (RR 6 155). RAul was struck first in the neck, causing him to fall. RAul got up and took off running, but he was knocked down by a second shot which struck Raul in the back. (RR 6 155-156) RAul Remained on the ground until he was helped up by Anel, who took RAul to the hospital. While lying there, Raul saw Luis Pena some distance away, also on the ground. (RR 6 156,169,176,177) Raul was immediately hospitalized after the shooting, where he was treated for gunshot wounds to the neck and back. (RR 6 ps 157-162) While hospitalized

10

Raul learned that the bullet wound in his back yielded not trace of the offending projectile, yet there was no apparent exit wound. (RR 6 ps 161-162)

Cynthia testified that she heard three shots in total. (RR 6 p 32) RAul testified he also heard three shots. (RR 6 p 159) Michael VAnderbilt said that he heard approximately three shots. (RR 6 p 95) Donald VAnderbilt recolled hearing four shots total two from the NOrth and two from the South. Donald VAnderbilt said he never saw a gun. (RR 6 ps 106-108)

A .40 caliber shell casing was recovered at the scene by Celeste Valle, who was employed by the Big Spring Police Dept. (RR 6 p 194) Valle also described a bullet fragment that was recovered from the rear deck area of the suspect CAdillac. (RR 6 p 205)

On October 31, 2012, Chris, Cleo, and Gomezindo Diaz were arrested together in SAn Angelo, TExas. (RR 6 ps 266-273) DEtective Chris Chapa of the SAn Angelo Police DEpartment recovered a .40 caliber handgun from Cleo Marquez at the time of his arrest. (RR 6 ps 270-271)

The firearms expert, Joseph Mata, conducted comparison tests on the .40 caliber shell casing found at the scene, and the Springfield Armory .40 caliber pistol that was recovered from Cleo at the time of his arrest. Mata concluded that the .40 caliber casing found at the scene appeared to have been fired from the .40 caliber pistol seized from Cleo Marquez at the time of his arrest. (RR 7ps 63-65) Mata also examined the fragments recovered from the

11

autopsy, and concluded that those fragments were from a small caliber weapon, like a .22. (RR 7 p 65) The fragment recovered from the rear deck of the CAdillac was to badly damaged for Mata to determine the caliber of the original round. At best, the "copper wash" feature of the fragment found in the CAdillac indicated that the fragment was consistent with a .22 caliber bullet. (RR 7 ps 55-56)

In general the evidence at trial demonstrated that Chris Marquez, the Appellant, intended to harm Raul Mendez, because Chris was involved in a fight against Raul, and because Chris was seen pointing a fun at RAul, and shooting RAul twice. But Luis Pena was not involved in the dispute inside the VFW.

Viewing the evidence in light most favorable to the verdict Appellant acknowledges that Michael VAnderbilts testimony provides an arguable basis from which a rational jury could have infered Appellant's specific inrwnt to harm Luis Pena. IN particular, Michael acknowledged his written statement, which said; "As I ran around the CAdillac, I saw a HIspanic male pointing a .22 -- a black .22 revolver toward RAul and Luis Pena." INdeed pointing a gun at someone -by itself-constitutes evidence of intent to cause harm to the person at whom one points the gun. The brief reference to Michael VAnderbilts written statement constitutes" a mere modicum of evidence from which a jury might have inferred Appellant Chris Marquez specific intent to harm Luis Pena. Several factors conspire to undermine the probative value of Michel VAnderbilts reference to his statement.

12

First Micheal's testimony at trial described his opportunity to observe as a "split second." (RR 6 p 93)

Second, Michael, denied that he had seen Luis Pena outside the VFW until after the shooting. (RR 6 p 96); He denied seeing anyone point a gun at RAul or Luis. (RR 6 p 119) He denied having seen anyone with RAul outside the VFW. (RR 6 100) And he acknowledged that he came to believe "after the fact" that Luis Pena had been with Raul. (100)

Third, the written statement the prosecutor refered to was executed a full month after the event. It appears that the statement was influenced by information Michael obtained "after the fact". (see RR 6 119) There was no evidence that Luis Pena was ever involved in the fight and RAul was unaware that anyone had followed him out of the VFW, and RAul made no mention of any involvement of Luis Pena.

Fourth, the significance of the passage read from Micheal's statement is entirely ambiguous, because the question itself was ambiguous.

Fifth, during the investigation of the shooting, SEargent Brian Gordon of the Big Spring, Police DEpartment was contacted by Michael and Donald VAnderbilt on the morning of October 27, 2012. (RR 6 p 298) Based on  Gordon's discussion with the VAnderbilts Officer Gordon did not believe the VAnderbilt brothers had seen who fired the shots. (RR 6 ps 300-301)

Sixth, even if it were true Michael had seen a Hispanic pointing a .22 gun he did not know who he might have seen. There were two Hispanic men with weapons that night. Cleo had a .40 caliber.

13

Seventh, if it were true Michael saw a Hispanic pointing a .22 gun toward Luis, toward does not constitute pointin at, aiming at of shooting at, someone. RAul was aimed at, pinted at, and shot at, Luis location may have placed him accidently in the line of fire.

Eight, Michael's testimony does nothing to minimize the likely possibility that Luis was an unintended victim. Assuming, Cynthia, RAul, and Michael were all correct that there were three shots, two were accounted for by RAul's injuries, and one could have been accounted for by a discharge from the .40 caliber later recovered from Cleo that matched the discharged casing at the scene or the fragment projectile missing from Raul's back or the fragment projectile missing from the fragment in the rear back glass either of which could have ricochet and caused the head wound to luis Pena as there were two fragments in the wound that caused serious injury and death to Luis Pena.

Because there is only a modicum of evidence that Chris DAniel Marqez, had intent to harm Luis Pena in particular, and the freat weight of evidence implies that Appellant intended to harm RAul Mendez instead, the evidence is legally insufficient to prove beyond a reasonable doubt that Appellant had the requisite intent to harm Luis Pena in the manner which his intent was alleged in the indictment. Jackson v Virginia, 443 U.S. 307, 309 (1979); Isassi v State, 330 S.W. 3d 633, 638 (Tex. Cr. App.2010)(Evidence is insufficient in relevant part because (2) the record contains a mere "modicum of evidence probative of an element of the offense") namely in the instant case intent to cause serious injury causing death. PLease GRant acquittal, Tibbs v Florida, 457 U.S 31,40-41(1982)

14

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Petition for Discretionary Review be Granted, and after further review, the judgment of conviction in Count II (Murder) be Reversed, and that a judgment of ACQUITTAL be entered.

Respectfully submitted,

*Chris Marquez*
Christopher Daniel Marquez
TDCJ No. 1865294
Telford Unit
3899 State Highway 98
New Boston, Texas 75570

## CERTIFICATE OF SERVICE

This is to certify that on October 20, 2015 the Original Petition for Discretionary Review was executed and mailed for copying by Appellant's mother and after copying, the Original and 11 copies were sent to the Clerk of this Court for filing on Monday, October 26, 2015 and should be recieved on or before the deadline for filing October 30, 2015, and on October 26, 2015 a true and correct copy was served by U.S. Mail pre-paid postage attached to Hon. Hardy Wilkerson, 118th District Attorney, at P.O. Drawer 149, Big Spring, Texas 79721, and a correct and true copy of the Petition for Discretionary REview was served to the State Prosecuting Attorney, Lisa McMinn, at 209 W. 14th St. Rm 202, ; Capitol Station, Austin, Texas 78711, pursuant to TRAP 68.11.

*Chris Marquez*
Christopher Daniel Marquez
Appellant Pro-se

This document was executed on October 20, 2015.

15

**APPENDIX**
**OPINION BY THE COURT OF APPEALS**



# 11TH COURT OF APPEALS
## EASTLAND, TEXAS
### JUDGMENT

Christopher Daniel Marquez,

* From the 118th District
  Court of Howard County,
  Trial Court No. 13644.

Vs. No. 11-13-00192-CR

* July 31, 2015

The State of Texas,

* Memorandum Opinion by Wright, C.J.
  (Panel consists of: Wright, C.J.,
  Willson, J., and Bailey, J.)

This court has inspected the record in this cause and concludes that there is no error in the judgment below.  Therefore, in accordance with this court's opinion, the judgment of the trial court is in all things affirmed.



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00192-CR

_____

## CHRISTOPHER DANIEL MARQUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 118th District Court

Howard County, Texas

Trial Court Cause No. 13644

## MEMORANDUM OPINION

The grand jury returned a three-count indictment against Christopher Daniel Marquez. In Count I, the grand jury charged Appellant with the offense of aggravated assault causing serious bodily injury to Raul Mendez; in Count II, it charged him with the offense of murder of Luis Adolfo Pena, Jr.; and in Count III, it charged him with the offense of unlawful possession of a firearm by a felon. After

a trial, the jury found him guilty on all three counts,[1] and the trial court then assessed his punishment at confinement for fifteen years, forty years, and ten years respectively. The trial court ordered that the sentences were to run concurrently. We affirm.

Appellant presents us with one issue: the evidence is insufficient to show that Appellant intended to cause serious bodily injury to Luis Adolfo Pena, Jr., the murder victim. Appellant has not challenged his convictions under Count I and Count III.

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's role as the sole judge of the witnesses' credibility and of the weight to be afforded to that testimony. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we will presume that the factfinder resolved any conflicts in favor of the

---

[1]Before the testimony began, and without objection, the State struck the word "serious" before "bodily injury" in Count I of the indictment. The charge in Count I of the indictment then became aggravated assault causing bodily injury; the offense of which the jury ultimately found Appellant guilty. However, in the judgment, the trial court recited that the conviction was for the offense of aggravated assault causing serious bodily injury. But there has been no appeal from that judgment.

prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

When viewed in the light most favorable to the verdict, the evidence showed that around 10:00 p.m. on Friday, October 26, 2012, Cynthia Trevino and Luis Pena, Jr. went to a club together to celebrate the fact that her divorce had become final. Cynthia and Luis had known each other for about fifteen years, but had only become romantically involved in August 2012.

Cynthia and Luis first went to a couple of different clubs in Big Spring. At each of the places, they had drinks with several people, including Raul Mendez, who was Cynthia's cousin, and Raul's date, Anel.

Friday night turned into Saturday morning, and eventually, sometime after 2:00 a.m., Cynthia and Luis ended up for more drinks at a Halloween party at the VFW hall in Big Spring. According to Cynthia, Raul and Anel got to the VFW "right after" she and Luis did. Not long thereafter, Cynthia noticed that Raul was looking across to the other side of the building; he was looking at Ramiro "Cleo" Marquez, Appellant's brother. Raul and Cleo were "staring each other down because of Anel." Anel was Cleo's former girlfriend.

Raul walked across the room to confront Cleo, and when he got there, they began to fight. Four others, including Appellant, joined Cleo in the fight against Raul. Cynthia, Luis, and other "random people" broke up the fight. Cleo and the others who were fighting with him ran outside. Raul ran after them. "Everybody ran. Everybody ran."

When Raul ran to the back of "their" vehicle (a white Cadillac), Appellant shot him. At that time, Appellant was on the driver's side of the vehicle toward the back. Raul was behind the vehicle, close to the trunk. As Raul tried to "make a run for it," Appellant shot him again, this time in the back. As Cynthia watched Raul fall, she heard another shot to her right. After the shot was fired, Appellant and the

3

others "[took] off" in the vehicle. It was at this point that she found Luis lying on the ground with a bullet hole in his head. Cynthia told the jury that it was there on that parking lot that Luis took his last breath.

Appellant was the only person that Cynthia saw with a gun that morning, and she watched him point it at Raul and fire. Raul and Cynthia both testified that Raul was shot twice. At the time, Appellant was on the driver's side of the vehicle, and Raul was on the passenger's side. Appellant fired the first shot across the roof of the vehicle. Appellant shot Raul the second time as Raul was running away; Appellant shot him in the back. Raul continued to run and ultimately ended up hiding behind Anel's vehicle, which was located on the south side of the parking lot. As he was taking cover there, Raul heard a third shot.

Other witnesses testified that they were on the parking lot at the time of the shootings and heard gunshots. Michael Vanderbilt said that he heard approximately three shots, but that he could not identify who the shooter was and that, when he saw a gun, he immediately turned away. He also testified that he did not see Luis outside until after Luis had been shot. However, in an earlier statement that he had made, Michael said that the shooter pointed a black .22 revolver toward Raul and Luis. The expert testimony in the case indicated that Luis's wound was "consistent with a soft lead, small caliber projectile, such as would be commonly seen in a .22 long rifle."

Another witness, Donald Vanderbilt, testified that he heard about two shots to the south side of where he was in the parking lot and two shots to the north side of where he was in the parking lot. Raul's blood was found on the ground on the south side of the parking lot—the passenger's side of the vehicle—behind Anel's vehicle where he was hiding. Luis's body was found on the north side of the parking lot.

Appellant's position on appeal is that the evidence constitutes no more than "a modicum of evidence that Appellant intended to harm" Luis rather than Raul. He

4

claims the evidence "overwhelmingly implied" that, "at best," Luis was an unintended victim and that Raul was the intended victim. Further, Appellant contends that the jury charge did not contain an instruction on transferred intent. Therefore, argues Appellant, even though the evidence would have supported a conviction under that theory, the jury was not authorized to convict under a theory of transferred intent.

The State counters that it was not relying on a theory of transferred intent to support the conviction. The State maintains that there was more than a "mere modicum" of evidence from which a rational jury could have found beyond a reasonable doubt that Appellant intentionally shot Luis.

A person commits the offense of murder if that person intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b) (West 2011). An inference that a person acted with the requisite intent may be drawn from his acts, words, and conduct. *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. [Panel Op.] 1982); *Griffith v. State*, 315 S.W.3d 648, 651 (Tex. App.—Eastland 2010, pet. ref'd). Further, an intent to kill may be inferred from the use of a deadly weapon. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

When we view the evidence in the light most favorable to the verdict, we agree with the State that a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. As far as any alleged conflicts in the evidence, the jury was free to resolve them. *See Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). We assume that the jury resolved any conflicts in favor of the verdict. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex. Crim. App. 1996).

When viewed under the appropriate standard of review, the evidence shows that Luis had intervened in the fight between Cleo and Raul—a fight in which

5

Appellant was involved. Witnesses testified that Appellant fired two shots at Raul, hitting him both times. Next, as the State argues, the evidence shows that there were two different lines of fire and that those lines of fire were in two different directions. The shots that hit Raul were fired in a different direction than the shot that killed Luis. Luis was shot on the same side of, and near to, the place where Appellant was standing. Raul was shot on the opposite side from where Appellant was standing. There was testimony from witnesses that three shots were fired. That testimony conforms to the evidence that Appellant shot Raul twice and shot Luis once. The bullet that caused Luis's single wound to the head was consistent with wounds caused by small caliber bullets like a .22. Testimony showed that Appellant was holding and aiming a black .22 revolver. Witnesses saw Appellant with a gun, a black .22 revolver; no one saw anyone else with a gun during the incident.

From this evidence, and the reasonable inferences to be drawn from it, we believe that a rational jury could have found beyond a reasonable doubt that Appellant intended to cause serious bodily injury to Luis and that Appellant was guilty of the offense of murder as charged in Count II of the indictment. We overrule Appellant's sole issue on appeal.

We affirm the judgment of the trial court.

JIM R. WRIGHT
CHIEF JUSTICE

July 31, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

6