# NO. 12-17-00254-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICHAEL ANTHONY ANDERSON,*<br>*APPELLANT* | § | *APPEAL FROM THE 420TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Michael Anthony Anderson appeals his convictions for two counts of continuous sexual abuse of a child. Appellant presents three issues on appeal. We affirm.

## BACKGROUND

Appellant was charged by indictment with eleven counts of sexual abuse of two children. Counts I through VI alleged continuous sexual abuse and the predicate offenses of indecency with a child and aggravated assault of a child against H.G. Counts VII through XI alleged continuous sexual abuse and the predicate offenses of indecency with a child and aggravated assault of a child against C.B. Appellant pleaded "not guilty" to each of the eleven counts, and the matter proceeded to a jury trial. At the close of evidence, the State moved to dismiss Counts III, V, VI, and IX, and proceeded on the remaining counts. The jury found Appellant guilty of Counts I and VII, continuous sexual abuse of H.G. and continuous sexual abuse of C.B. Appellant was sentenced to life in prison. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his third issue, Appellant argues that the evidence is insufficient to support his conviction. Specifically, he contends the State failed to establish that the alleged acts occurred

during a period that is thirty or more days in duration. We address this issue first because, if sustained, it affords the greatest relief.

**Standard of Review**

In Texas, the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899.

When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.–Corpus Christi 2006, no pet.).

**Applicable Law**

To establish the offense of continuous sexual abuse of a child, the State must prove that appellant, during a period of time thirty or more days in duration, committed at least two acts of sexual abuse against a child younger than fourteen years of age, while he was at least seventeen years of age at the time of each of the acts. *See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2017). The acts of sexual abuse can be against one or more victims. *Id.* § 21.02(b)(1). An "act of sexual abuse" is defined as including an act that constitutes the offense of indecency with a child, sexual assault, aggravated sexual assault, or sexual performance by a child. *Id.* § 21.02(c)(2),(3),(4),(6); *see id.* § 21.11(a)(1) (West Supp. 2017) (indecency with a child); *see id.*

2

§ 22.011 (West Supp. 2017) (defining acts that constitute sexual assault, including causing the penetration of the anus of a child by any means and causing the penetration of the mouth of a child by the sexual organ of the actor); *see id.* § 22.021(a)(1)(B) (West Supp. 2017) (enumerating acts that constitute offense of aggravated sexual assault, including causing penetration of child's anus or sexual organ, causing penetration of child's mouth by actor's sexual organ, and causing child's sexual organ, anus, or mouth to contact or penetrate mouth, anus, or sexual organ of another person); *see id.* § 43.25 (West Supp. 2017) (sexual performance by a child).  The State need not prove the exact dates of the abuse, only that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration."  **Brown v. State**, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.); **Lane v. State**, 357 S.W.3d 770, 773–74 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (stating that factfinder is not required to agree on exact dates that acts of sexual abuse were committed).

<u>Analysis</u>

Appellant contends that the evidence was insufficient to show that the alleged incidents occurred during a time period that was thirty days or more in duration and, consequently, the evidence is insufficient to support the jury's "guilty" verdict.

C.B., who was eighteen years old at the time of trial, testified that he knew Appellant as his mother's boyfriend.  C.B. met Appellant in April or May at the end of his sixth grade year.  Appellant eventually moved in and lived with them for "months."  C.B. testified that the first inappropriate action occurred when he came home from school one day and Appellant asked C.B. to lie in bed with him.  According to C.B., the interactions progressed in other incidents "to the point of being more forceful and more removal of clothing over time."  C.B. stated that he would be fondled and touched through the clothing before being asked to remove it and then fondled without clothing.  When asked about the frequency of the touching, C.B. stated that there were more incidents than not when Appellant touched his genitals.  He further testified that Appellant asked C.B. to touch him, but it never went past touching.  Appellant forced him to participate if he refused.  C.B. further testified that on one occasion Appellant penetrated his anus.  When asked why he failed to report Appellant's conduct, C.B. stated that he did not say anything because his brother previously said something to their mother and she accused him of lying.  In addition, Appellant said there would be repercussions if C.B. said anything.  C.B. testified that he did not know the exact timeframe of the incidents, but that they occurred over more than thirty days.  Also,

in 2015, his mother caught him sending sexual text messages and he lied to her about them. When C.B.'s stepfather asked him if something happened to him and whether a series of people harmed him, C.B. answered affirmatively when his stepfather mentioned Appellant's name.

Claudia Gonzalez, the supervisor of forensic services at the Children's Assessment Center in Houston, interviewed C.B. regarding allegations against Appellant. Gonzalez testified that, in the interview, C.B. described that his mother's ex-boyfriend, who he referred to as Mikey, engaged him in several sexual acts where he asked C.B. to go to the bed. C.B. also described body positioning, where Mikey would be behind him, and he would be undressed. Mikey would fondle C.B.'s "penis and balls," and Mikey made C.B. touch Mikey's "penis and balls." Mikey penetrated his anus one time. Gonzalez testified that the acts covered an extended period of time and the activity gradually progressed. C.B. told Gonzalez that Appellant became more forceful over time and, although Appellant never left bruises, C.B. wished he had so that someone would ask him about it. Gonzalez stated that C.B. said he last saw Appellant when he was in seventh grade.

H.G., who was fifteen years old at the time of trial, testified that he first met Appellant between third and fourth grade. Appellant was his mother's significant other and eventually moved in with them. H.G. testified that the interactions began as groping and fondling. H.G. was lying down and Appellant cuddled next to him, stuck his hands down H.G.'s pants, and groped. H.G. testified that he told his mother about it but that she did nothing. H.G. stated that the groping occurred numerous times and Appellant also forced him to perform oral sex on Appellant. H.G. stated that he did not remember the exact dates of the incidents, but they happened over a period of time more than thirty days. H.G. further testified that the incidents began in the fall going into winter, but he did not know the exact dates. In December 2011, H.G. told his biological father about the incidents and his father reported it; however, nothing resulted from that investigation.

H.G.'s version of events was further supported by the testimony of outcry witness Erika Gomez, a bilingual forensic interviewer at the Children's Assessment Center in Houston. H.G. told Gomez that he was molested numerous times, including Appellant touching H.G.'s penis numerous times and forcing H.G. to perform oral sex more than once. He told Gomez that the touchings started when he was in third grade.

The evidence introduced at trial showed that both C.B. and H.G. were subjected to sexual abuse on numerous occasions. C.B. testified that he was forced to remove his clothes and touch Appellant's penis several times. On one such occasion, C.B. testified that Appellant's penis

4

penetrated his anus. C.B. further stated that, while he did not recall the exact dates or timeframe of the events, they occurred over a time period that lasted thirty days or more. Furthermore, Gonzalez testified that C.B. told her that he met Appellant at the end of his sixth grade year and last saw him while in the seventh grade. H.G. also testified that he endured several instances of abuse at the hands of Appellant. H.G. stated that he was forced to remove his clothing and lie with Appellant in the bed while being groped. In addition, Appellant made H.G. perform oral sex on several occasions. H.G. stated that he did not remember the exact dates or timeframe but that the abuse occurred over a time period that lasted at least thirty days. As sole judge of the weight and credibility of the evidence, the jury was entitled to credit this testimony regarding duration of the sexual abuse. *See Padilla*, 326 S.W.3d at 200; *see also Brooks*, 323 S.W.3d at 899.

In doing so, based on the testimony presented at trial, the jury could reasonably conclude that Appellant committed at least two acts of sexual abuse against both C.B. and H.G. during a period of time of thirty days or more in duration. *See* TEX. PENAL CODE ANN. § 21.02; *see also Brown*, 381 S.W.3d at 574. Thus, viewing the evidence in the light most favorable to the State, we conclude that the evidence is legally sufficient to support the jury's findings, beyond a reasonable doubt, that Appellant committed the offense of continuous sexual abuse of a child against both C.B. and H.G. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Brooks*, 323 S.W.3d at 912; TEX. PENAL CODE ANN. § 21.02(b). We overrule Appellant's third issue.


### EXPERT QUALIFICATIONS

In his first issue, Appellant maintains that the trial court abused its discretion in allowing Gonzalez to testify as an expert regarding grooming of sexual abuse victims. He contends that Gonzalez lacked the proper qualifications for so testifying.

### Standard of Review and Applicable Law

The trial court's decision to allow a prospective witness to testify as an expert is reviewed for abuse of discretion. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. TEX. R. EVID. 702. Before admitting such testimony, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill,

experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). The first of these conditions is at issue in the present case.

An appellate court may consider several criteria in assessing whether a trial court clearly abused its discretion in ruling on an expert's qualifications: (1) whether the field of expertise is complex, (2) how conclusive is the expert's opinion, and (3) how central the area of expertise is to the resolution of the lawsuit. *Id*. at 528. No rigid formula exists for determining whether a particular witness is qualified to testify as an expert. *Malone v. State*, 163 S.W.3d 785, 793 (Tex. App.–Texarkana 2005, pet. ref'd). "Licensure or certification in the particular discipline is not a per se requirement." *Harnett v. State*, 38 S.W.3d 650, 659 (Tex. App.–Austin 2000, pet. ref'd).

**Discussion**

Appellant contends that Gonzalez lacks the training or expertise necessary for her to testify concerning "grooming." He further argues that Gonzalez is neither a psychologist nor a psychiatrist.

The Court of Criminal Appeals has held that "grooming" of children for sexual molestation is a legitimate subject of expert testimony. *Morris v. State*, 361 S.W.3d 649, 650 (Tex. Crim. App. 2011). The court determined that grooming evidence at its most basic level is testimony describing the common behaviors of child molesters and whether a type of evidence is consistent with that behavior. *Id.* at 666. A person can, through his or her experience with child-sex-abuse cases, gain a superior knowledge regarding grooming. *Id.* at 666-67. The court also noted that grooming evidence has been received by courts from numerous types of experts, including psychiatrists, psychologists, therapists, social workers, and law enforcement. *Id.* at 666. In *Morris*, a Texas Ranger was permitted to offer an opinion on grooming when he had no education in either psychology or psychiatry. *Id.* at 668.

During the hearing, Gonzalez testified extensively about her training and qualifications. Gonzalez is the supervisor of forensic services at the Children's Assessment Center in Houston and manages a team of more than twenty staff members, including forensic interviewers, forensic evaluation clinicians, and family advocates. Prior to being a supervisor, she was a forensic evaluation clinician at the Children's Assessment Center. Gonzalez has been conducting forensic interviews for five years. She further testified that she has a master's degree in community

6

counseling and is a licensed professional counselor supervisor. Gonzalez was trained by both the Children's Advocacy Center of Texas and the National Children's Advocacy Center. Prior to becoming a forensic interviewer, Gonzalez worked as a school counselor and worked with the advocacy center in San Antonio where she gained experience with child-sex-abuse cases. Gonzalez conducted more than 2,000 forensic interviews and previously testified as an expert witness covering topics that are common to child-sex-abuse cases, including "grooming."

The record reflects that Gonzalez was qualified to testify about "grooming" based on her training, education, and experience with child-sex-abuse cases. *See id.*; TEX. R. EVID. 702. Moreover, "grooming" is not a scientifically complex issue. *See Morris*, 361 S.W.3d at 670 (Cochran, J., concurring) (noting that "grooming" phenomenon is "not rocket science" and does not depend on either scientific, technical, or psychological principles or methodology, or educational expertise, calculable rate of error, learned treatises, peer review, or other esoteric skill); *see also Bryant v. State*, 340 S.W.3d 1, 9 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (field of expertise with respect to grooming not particularly complex). Nor is evidence of grooming conclusive of whether Appellant committed continuous sexual abuse of C.B. and H.G. *See Bryant*, 340 S.W.3d at 9 (investigator's testimony about grooming not conclusive of anything, but served function of providing background information to jury, rather than offering an opinion that, if accepted by jury, may resolve any material issue in the case). As previously discussed, the record contains sufficient evidence to support Appellant's conviction even absent evidence of grooming. *See Rodgers*, 205 S.W.3d at 533 (in holding trial court did not abuse its discretion by finding witness sufficiently qualified to testify as an expert, court of criminal appeals noted the "abundance of other evidence pointing to appellant as the person who murdered his wife"); *see also Bryant*, 340 S.W.3d at 10 (within the context of all the evidence presented, testimony regarding grooming was not particularly central to determining Bryant's guilt or innocence). Thus, under these circumstances, the trial court could reasonably conclude that Gonzalez was sufficiently qualified to testify as an expert on grooming. *See Rodgers*, 205 S.W.3d at 527-28. Because the trial court did not abuse its discretion in admitting her testimony, Appellant's first issue is overruled.

## ADDITIONAL WITNESS TESTIMONY

In his second issue, Appellant argues that the trial court abused its discretion in admitting the testimony of Dr. Ellen Burress and Madison Fitzgerald because their testimony constituted a comment on the truthfulness of the allegations.[1]

## Standard of Review and Applicable Law

We review a trial court's ruling to admit or exclude testimony under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). However, a trial court does not abuse its discretion if some evidence exists to support its decision. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

Expert testimony that "assists" the trier of fact is admissible. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *see also* TEX. R. EVID. 702. Expert testimony may assist the trier of fact when the jury is not qualified to "the best possible degree" to determine the particular issue without such expert testimony. *Schutz*, 957 S.W.2d at 59 (quoting *Duckett v. State*, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990)). However, expert testimony does not assist the jury if it constitutes "a direct opinion on the truthfulness" of a child's sexual assault complaint. *Id.* (quoting *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993)).

## Analysis

Burress and Fitzgerald each testified at trial. Appellant contends that each witness's testimony constituted an opinion on the truthfulness of the allegations. We will take each witness's testimony in turn.

### *Dr. Burress*

Dr. Ellen Gayle Burress, a marriage and family therapist, testified as an expert on the issue of treating sexually abused children. While in private practice, she treated sexually abused children as a licensed professional counselor. She currently testifies as an expert in sexual assault cases regarding victim reactions, stages, and experiences. On appeal, Appellant challenges the following testimony by Dr. Burress:

---

[1] In his brief, Appellant's second issue states that the trial court erred in admitting the testimony of Dr. Burress, Fitzgerald, and Gonzalez. However, aside from the arguments presented in his first issue, Appellant's argument in his second issue does not address Gonzalez's testimony or point to any alleged errors in the record regarding her testimony. As a result, we do not address this portion of his issue. *See* TEX. R. APP. P. 38.1(i); *Hernandez v. Hernandez*, 318 S.W.3d 464, 466 (Tex. App.—El Paso 2010, no pet.).

Q. Do you see children who have been sexually abused demonstrate problems or symptoms of any sort after their abuse?

A. Sure.

Q. What sorts of issues do you see?

A. Children who act out, who are angry, who are withdrawn, who cut, self-harm, who themselves become perpetrators and try to do to another child what was done to them. Depression, eating disorders. And the list goes on and on.

Q. With a child that's been sexualized too early by someone who offended against them, what do you see as far as their sexuality that might occur?

A. Well, they're probably going to be sexually active much younger than they would normally. It gets younger every day. More than -- more than likely they're going to be sexualized much earlier.

Q. Do you ever see promiscuity?

A. Yes.

Q. Do you ever see -- you talked about depression. So are mood disorders in general something that -- that could accompany that sort of abuse?

A. Sure.

Q. And all of those things that you've talked about, you wouldn't be surprised to see in a victim and you would feel like it's consistent with sexual abuse?

A. Yes.

On appeal, Appellant contends that this testimony implied that C.B. and H.G. were being truthful. He argues that the State followed up with questions about the same behaviors and traits the victims claimed to experience. As a result, Appellant argues, the testimony opined on whether the victims were being truthful because they exhibited behaviors consistent with children who are sexually abused.

However, Appellant did not object at trial to the above testimony by Dr. Burress. Because Appellant did not raise this objection in the trial court, it is not preserved for appellate review. *See* TEX. R. APP. P. 33.1. Nevertheless, even had Appellant preserved his objection, the trial court did not abuse its discretion. Dr. Burress was not asked questions regarding the specific victims, offered no testimony regarding them, and testified to behaviors that the victims in this case did not exhibit. In addition, Dr. Burress testified that the conditions and behaviors she referenced were not necessarily indicators of sexual abuse. Dr. Burress did not testify, either directly or indirectly, that the victims in the case were or were not telling the truth. *See Yount*, 872 S.W.2d at 707-08. As

9

such, we conclude that the trial court did not abuse its discretion in admitting her testimony. *See Weatherred*, 15 S.W.3d at 542.

*Fitzgerald*

Madison Fitzgerald previously investigated the same allegations against Appellant for the Texas Department of Family and Protective Services. In January 2012, Fitzgerald was employed by the Department and interviewed H.G. At the conclusion of the investigation, the case was closed and the allegations were ruled out. At trial, Fitzgerald testified as follows:

Q. And, so, if your understanding and belief was that the perpetrator would no longer have access to the child, then that stops your inquiry?

A. Correct.

Q. In other words, your job is not to prosecute people or hold them responsible for any alleged acts?

A. Correct.

Q. Do you understand what the nature of the allegations are in this case, currently?

A. Yes, ma'am.

Q. Do you have any thought about what happened in that case?

MR. COOPER: I'm –

THE COURT: Hold on.

MR. COOPER: I am going to object. Calls for speculation.

THE COURT: I'm not sure the nature – I'm not sure what the question -- exactly what the question being asked is referring to. So, sustained at this point.

Q. (BY MS. CASSELS) Do you think you made the right call?

A. Regarding?

Q. Whatever conclusion you came to as a CPS worker.

MR. COOPER: Judge, I am going to object to the relevancy of that question.

THE COURT: Overruled.

THE WITNESS: Does that mean answer?

THE COURT: You can answer, yes.

THE WITNESS: Okay. Yes.

Q. (BY THE STATE) You think you made the right call?

A. Oh, no, ma'am. I think –

STATE: No questions –

THE WITNESS: I think I made the wrong call.

On appeal, Appellant contends this testimony informed the jury that Fitzgerald believes the victims are truthful, believes the allegations of the complaining witness, and made a mistake in closing the initial investigation.

At trial, Appellant failed to object to Fitzgerald's testimony on grounds that it constituted a comment on the victims' truthfulness. As a result, his argument on appeal does not comport with the objection made at trial and the alleged error is not preserved for appellate review. *See **Walker v. State***, 469 S.W.3d 204, 210-11 (Tex. App.—Tyler 2015, pet. ref'd); *see also* TEX. R. APP. P. 33.1. However, even assuming Appellant preserved error, Fitzgerald's testimony did not constitute a comment on the victims' truthfulness. As evidenced in the record, Fitzgerald's testimony demonstrated that the focus of her inquiry in the prior investigation was not on Appellant but on whether the child was safe in his home and with his caretakers. Contrary to Appellant's argument, Fitzgerald did not directly or indirectly comment on the truth or falsity of the victims' accounts. *See **Yount***, 872 S.W.2d at 707-08. Rather, she testified that closing the case in 2011 was a mistake, indicating that it should have been investigated further. In addition, Fitzgerald's testimony was not offered as expert testimony, but as lay testimony. She did not testify to the specifics of the allegations, but merely testified that they involved sexual abuse, and specifically explained that the Department does not focus on the criminal aspects of the case. *See **Ex parte Nailor***, 149 S.W.3d 125, 135 (Tex. Crim. App. 2004) (lay witness may offer opinion on ultimate issue); *see also **Cohn v. State***, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993) ("bolstering" is any evidence for the sole purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing "to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence"); ***Turro v. State***, 950 S.W.2d 390, 400 (Tex. App.—Fort Worth 1997, pet. ref'd) (if "evidence makes any substantive contribution, even if it only incrementally tends to further establish a fact of consequence, it is not bolstering"). As a result, the trial court did not abuse its discretion in admitting Fitzgerald's testimony. *See **Weatherred***, 15 S.W.3d at 542.

*Summation*

Because the trial court did not abuse its discretion in admitting Burress's or Fitzgerald's testimony, we overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first, second, and third issues, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered September 19, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

SEPTEMBER 19, 2018

NO. 12-17-00254-CR

**MICHAEL ANTHONY ANDERSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 420th District Court
of Nacogdoches County, Texas (Tr.Ct.No. F1622741)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*