Opinion filed June 28, 2012



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00153-CR

_____

## KYLIE LORRAINE MICHELL A/K/A KYLIE BROWN, Appellant

## V.

## STATE OF TEXAS, Appellee

On Appeal from the 35th District Court

Brown County, Texas

Trial Court Cause No. CR20302

## O P I N I O N

The jury found Kylie Lorraine Michell a/k/a Kylie Brown guilty of the offense of continuous sexual abuse of a young child or children. The victims were her stepdaughter and her stepson, both of whom were under the age of fourteen. Appellant elected to have the trial court assess her punishment, and it assessed her punishment at imprisonment for life. We affirm.

Appellant presents us with three issues on appeal. In her first issue, she generally argues that the evidence is insufficient to support the verdict of guilty. In Issue Two, she claims that the trial court erred when it admitted "the wrong outcry witness and multiple outcry witnesses." In

her third issue, appellant claims that the trial court committed reversible error when it denied her request for an instruction on lesser included offenses.

Because the State charged appellant with continuous sexual abuse of a child, the State had to prove three elements: (1) the defendant "commit[ted] two or more acts of sexual abuse" (2) "during a period that is 30 or more days in duration," and (3) "at the time of the commission of each of the acts of sexual abuse, the [defendant was] 17 years of age or older and the victim [was] a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2011).

In her first issue, appellant maintains that the State did not meet its burden in that it did not prove that the instances of sexual abuse took place during a period that was thirty or more days in duration. For that reason, she claims that the evidence is insufficient to support the verdict of guilty.

Normally, we would discuss the sufficiency of the evidence issue first. However, a resolution of that issue involves the issue of the appropriateness of admitting the testimony of the alleged outcry witnesses. We will consider the complaint directed at outcry witnesses first.

We refer to the child victims in this case by the pseudonyms previously assigned to them in the indictment: Angela Green and Adam Green. Appellant is their stepmother. Their father, Cass Anova Brown, is a codefendant with appellant in this case. The jury convicted Cass Brown, in a joint trial with appellant, of the same offense involved in this appeal. Today, in a separate opinion, we also affirm Cass Brown's conviction.

Angela was eleven years old and in the fourth grade when she told a friend at school that she was being sexually abused. Because Angela suffered from ADHD, she and her friend wrote down the directions for Angela to use to call the police to report the sexual abuse. The friend also wrote down her mother's phone number in case Angela needed help. Angela telephoned the 9-1-1 dispatcher on January 7, 2009. The State produced a CD recording of the 9-1-1 conversation, and the trial court admitted it.

Amanda Williams was the 9-1-1 dispatcher who received Angela's call. Williams directed Officer Stephanie J. Morgan of the Brownwood Police Department to the address Angela gave to Williams: 1612 Indian Creek Road in Brownwood. When Officer Morgan got there, Angela came out of the house. She did not want Officer Morgan to go inside because the house was messy. Angela was scared and upset, but she gave Officer Morgan basic personal

information and told her about the general nature of the reason behind the call to 9-1-1. Officer Morgan talked with Angela for "probably about 10 minutes." Adam never made any comments to Officer Morgan about sexual abuse.

Officer Morgan contacted Child Protective Services. Kimberly Cruz and Shannon Duran responded and went to 1612 Indian Creek Road. Angela finally allowed Officer Morgan, Cruz, and Duran to go inside the house. Officer Morgan described the condition of the house to the jury: "The house inside was in general disarray. There was clothes in the floor, trash, dirty dishes, the kitchen was very dirty, the bathroom as well." The mattresses were not covered with linens and were very dirty. Animals were in the house, and the house smelled of animal urine and feces. The house was not habitable for children. There was no objection to any of this testimony. Cruz photographed the inside of the house.

While Officer Morgan and the others were at the house, Cass Brown arrived. Officer Morgan told him that Angela had accused him of touching her inappropriately and of engaging in sexual misconduct. He denied any illegal behavior. He thought that Angela might be rebelling in response to discipline imposed upon Adam and her for stealing candy from a convenience store and for not doing their chores. Additionally, Cass Brown said that Angela might be referring to a time when she was bleeding vaginally, and he used his hand to examine for the cause; he determined it to be the result of drinking too much apple juice. That day, CPS removed Angela and Adam from the home.

The next day, January 8, 2009, Mikey Betancourt, a forensic interviewer with the Hill Country Child Advocacy Center, interviewed Angela in depth. Over a hearsay objection, the trial court allowed the State to use Betancourt as the outcry witness in the case involving Angela.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). We will reverse the trial court's decision only if it acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Id.* at 380. We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* at 391.

Article 38.072 of the Code of Criminal Procedure permits outcry statements by certain victims of child abuse to be admitted during trial, despite the hearsay rule, if the provisions of that article are met. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2011). The only provision of Article 38.072 about which appellant complains is the provision that requires that

before a witness can qualify as a proper outcry witness, the person must have been at least eighteen years old and must have been the first person to whom the victim made statements about the offense. *Id.* § 2(3). We note that the child must have described the alleged offense in some discernible way and that the outcry must be more than a general allusion to sexual abuse before a person is a proper outcry witness. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd). There may be more than one outcry witness provided that each one testifies about different instances. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *Broderick v. State*, 35 S.W.3d 67, 73–74 (Tex. App.—Texarkana 2000, pet. ref'd). A trial court has broad discretion to determine the admissibility of outcry evidence, and we will not disturb its determination as to the proper outcry witness absent a showing in the record that the trial court clearly abused its discretion. *See Garcia*, 792 S.W.2d at 92; *Smith v. State*, 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref'd).

Appellant complains that there were "several other individuals" to whom Angela made an outcry before the interview with Betancourt, including the 9-1-1 dispatcher and Officer Morgan. Therefore, she says, Betancourt, the State's outcry witness, could not be the proper outcry witness. For several reasons, we disagree.

We have listened to the CD recording of the call from Angela to 9-1-1. Angela told the dispatcher, Williams, that her mom made her put her hands up in her. She also told Williams that her dad put his middle part up in her.

We have considered Officer Morgan's testimony as well as that portion of her incident report that is contained in the reporter's record as a trial court's exhibit admitted during the voir dire examination of Officer Morgan. Officer Morgan reported that Angela told her that her parents "touched her in her private areas" and that her "dad puts his male parts inside of her."

We hold that the statements that we have referred to from the 9-1-1 call and Officer Morgan's report are no more than general allusions to sexual abuse. In *Sims*, 12 S.W.3d at 500, the child victim's mother testified that the child had told her that the defendant "had touched her private parts." On appeal, the court held that the trial court could have reasonably determined that the statement by the child to her mother that the defendant "had touched her private parts" was no more than a general allusion to sexual abuse. "On the other hand," the appellate court said, "the child's statements to [the outcry witness] regarding how, when, and where [the

4

defendant] touched her clearly satisfied the statutory requirements." *Id.*; *see Smith*, 131 S.W.3d at 930–31 (where testimony was that defendant "had been performing oral sex on [child] for about a year," the testimony did not relay specific details about charged offense of aggravated sexual assault of a child).

Officer Morgan's report also contains a statement that Angela told her that appellant made her place "her [Angela's] hands together, lacing and folding her fingers to make a fist." Appellant then made her put her hands "up inside of [appellant] in her private area." However, Betancourt's interview with Angela revealed that this happened on more than one occasion. As we shall see later, only Betancourt's testimony, as in *Sims*, provided "how, when, and where" this kind of abuse was allegedly inflicted upon Angela.

We think that the principle discussed in *Sims* is even more applicable where, as here, the actual charge goes beyond charging some type of sexual abuse and requires proof of the additional element that the instances of sexual abuse extend for a period in excess of thirty days. We hold that the information related by Angela to either Williams or Officer Morgan does not touch upon the detail required when a defendant is charged with continuous sexual abuse of a young child or children. As appellant points out to us, one of the elements of the offense with which appellant is charged in this case, and the one that she claims was not proven beyond a reasonable doubt, is the time element—that the acts of sexual abuse continued for a period in excess of thirty days. Such information was not a part of the 9-1-1 call. However, as we have said and as in *Sims*, the statements that Angela made to Betancourt concerned the "how, when, and where" of the offense. Those statements had not been made either to Williams or to Officer Morgan. Article. 38.072 requries a description of "the offense." "The offense" in this case is continuous sexual abuse of a young child or children and requires proof not only of the sexual abuse, but also that two or more instances of it occurred for a period of time in excess of thirty days. Section 21.02(b).

We will review Betancourt's testimony based upon his interview with Angela in our discussion of the next issue. Suffice it to say here, Angela told Betancourt about all the instances of sexual abuse by her father and by her stepmother in graphic detail, including the detail of the instances of abuse *as well as* the circumstances from which (as we shall discuss later in this opinion) the how, when, and where relative to the sexual abuse could be determined. The trial

court did not abuse its discretion when it allowed Betancourt to testify as the outcry witness in this case.

Moreover, Betancourt based his testimony on information gained in his interview with Angela. During the trial, appellant and Cass Brown jointly offered the video of that interview into evidence, and the trial court admitted it. Appellant cannot now be heard to complain of the information contained in it. A party may not complain on appeal of the admission of improper evidence, offered by the other side, when that party introduced the same evidence or evidence of a similar character. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). We are aware of the rule that an objecting party does not waive his objection in those cases where a trial court has erroneously admitted evidence and the opposing party introduces more evidence to meet, destroy, or explain it by introducing rebutting evidence. *Id*. at 719. That is not the case here, however. Appellant introduced the video, which was the very basis for Betancourt's testimony, and the video was not offered to meet, destroy, or explain Betancourt's testimony. Because she introduced the video of Angela's forensic interview into evidence, appellant has waived any error in the admission of Betancourt's testimony. *See id.* at 718–19. For all of the above reasons, we hold that the trial court did not abuse its discretion when it allowed Betancourt to testify as the outcry witness as far as Angela is concerned. Appellant's second issue on appeal is overruled.

Appellant frames her first issue as a broad challenge that the evidence is insufficient to support the jury's verdict of guilty. However, her arguments are more specifically directed to the dates and times of the alleged sexual abuse. She generally refers to the testimony regarding the acts themselves as "non-specific," "vague," and "incidents allegedly occurred." However, the more specific challenge that she makes in her argument is directed at the lack of sufficient evidence as to when the alleged acts of sexual abuse occurred—during a period of time that is more than thirty days in duration as required by Section 21.02(b). Appellant argues that "the State provided no specific date, but rather relied on broad time ranges based solely on locations where the incidents allegedly occurred."

Under the standard of review applicable to criminal cases, the evidence is sufficient to support a conviction if, considering all record evidence in the light most favorable to the verdict, a factfinder rationally could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v.*

*State*, 323 S.W.3d 893, 912, 926 (Tex. Crim. App. 2010). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Jackson*, 443 U.S. at 314, 318 n.11, 320. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

As we have said, to establish continuous sexual abuse of a child, the State must prove three elements: (1) the defendant "commit[ted] two or more acts of sexual abuse" (2) "during a period that is 30 or more days in duration," and (3) "at the time of the commission of each of the acts of sexual abuse, the [defendant was] 17 years of age or older and the victim [was] a child younger than 14 years of age." Section 21.02(b).

The legislature created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse. *See Williams v. State*, 305 S.W.3d 886, 890 n.7 (Tex. App.—Texarkana 2010, no pet.) (citing *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring) ("Perhaps the Texas Legislature can address this conundrum and consider enacting a new penal statute that focuses upon a continuing course of conduct crime—a sexually abusive relationship that is marked by a pattern or course of conduct of various sexual acts.")).

The primary purpose for specifying a date in an indictment is to show that the prosecution is not barred by a statute of limitations. *See Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998). Aggravated sexual assault of a child has no period of limitations. TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(B) (West Supp. 2011); TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West Supp. 2011). Similarly, continuous sexual abuse has no period of limitations. TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(D) (West Supp. 2011). Normally, in aggravated sexual assault of a child cases, time is not a material element. However, although the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration. *See* TEX. PENAL CODE ANN. § 21.02(d) (West Supp. 2011) ("The jury must agree unanimously that the defendant, during a period that is 30 or more

days in duration, committed two or more acts of sexual abuse."); *Williams*, 305 S.W.3d at 890–91 (requiring State to prove two acts of sexual abuse "committed over a span of thirty or more days"). Furthermore, "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." Section 21.02(d).

While Angela could not give the specific dates when the many instances of sexual abuse to which she referred took place, she was able to tell Betancourt the details of where they took place, the grade she was in at school at the time, or what the season of the year was at the time of the sexual abuse. Some of the instances occurred when the family lived at 902 Bailey Street in Brownwood. Angela gave Betancourt the details of other incidents of sexual abuse that occurred when the family lived at 1612 Indian Creek Road in Brownwood. She told about another incident during the summer at a lake house on Lake Brownwood. She also said that the last occurrences of sexual abuse took place between Thanksgiving and Christmas in 2008.

Records from the City of Brownwood showed that the Browns lived at 902 Bailey Street from April 2007 until December 2007. Those same records, as well as testimony from the owner of the house who rented it to the Browns, showed that the Browns moved into 1612 Indian Creek Road around December 20, 2007.

Angela told Betancourt that the first instance of sexual abuse occurred when appellant put her middle finger inside of Angela and kept going "in and out." This incident took place in appellant's room at 902 Bailey Street. Angela was seven or eight years old when this first act of sexual abuse occurred.

Betancourt testified that Angela told him about a later incident that occurred when the family was still living at 902 Bailey Street. Sometime around 4:00 a.m., appellant came into the room where Angela was sleeping. Appellant woke Angela and told her that she could not sleep and needed her to help. Angela protested that she needed her sleep so that she would not fall asleep in class. Nevertheless, appellant took Angela into appellant's bedroom and, after appellant put lubricant on Angela's hands, made Angela clasp her hands together, put them both inside appellant's "middle area," and move them around in a circular motion. It was established that the words Angela used for "vagina" were "middle area." Appellant told Angela, "Make sure you 'F-word' me real good and hard." (Angela used the term "F-word" in the interview with Betancourt). At some point in time, Angela took her hands out fast, washed them, and went to

8

bed. Appellant woke her up and spanked her as punishment for stopping. This same type of sexual abuse happened again when they lived at 1612 Indian Creek Road.

During her interview with Betancourt, Angela said that Cass Brown "sticked his middle area up in my middle area." It was established that Angela's words for "penis" were "middle area." That happened at more than one location on more than one occasion. One such incident took place when the family had just moved into the house at 1612 Indian Creek Road. They were still unpacking boxes and putting up beds. The evidence shows that this would have been sometime around December 20, 2007. Cass Brown told Angela that he wanted her "to get on top of [him] now." This incident happened on appellant's bed. Angela told Betancourt that her dad was going up and down and that it hurt. Her dad told her, "I'm going to 'F-word' you real good." (Again, Angela used the term "F-word" in the interview with Betancourt). Although she did not tell Betancourt exactly when, she said that "it" happened again soon thereafter.

Angela told Betancourt about another instance when Cass Brown told her, "Now or I am going to bust you all black and blue." On another occasion Cass Brown "lubed" himself; on another, he put this "little roll-up thing on his middle area." She did not know what the "roll-up thing" was called, but she drew a picture of it as it looked rolled up and unrolled and also drew a picture of the packaging.

Angela described another incident when that same thing happened later. "He made me get on top of him 'again' and it was upstairs" at a lake house on Lake Brownwood. This act of sexual abuse took place during the summer between Angela's third and fourth grades in school. Brownwood Independent School District records were admitted into evidence and showed that the summer between Angela's third and fourth grades was the summer of 2008. Angela remembered that it was summer because she was sweating. Angela and her dad were working on the lake house. The lake house was a two-story house. They either were working upstairs when Cass Brown told Angela to take off her clothes or were elsewhere when he told her to go upstairs and take off her clothes. She did not want to do that, but he told her that she had better do it. He made her get on top of him for a time and then on the bottom while he penetrated her "middle area" with his "middle area." She was ten at the time. She told Betancourt that she asked her dad, "Dad, why?"

Mike Morgan owned the lake house where Angela and Cass Brown were working. In order to establish a time frame for the sexual abuse that occurred at the lake house, the State

elicited testimony from Morgan that he bought the lake house on June 24, 2008, and that Cass Brown did some work on it after that. Both Angela and Adam had been to the lake house when Cass Brown was working on it. Morgan also rented the house at 1612 Indian Creek Road to the Browns, and he verified that the family moved into that house around December 20, 2007.

While she did not give a specific date, Angela told Betancourt that her dad had put his middle area in her mouth five or six times in the past. She said that he would grab her head and, demonstrating by putting her hand behind her head, would "push her head down on it."

Angela related to Betancourt that her dad and stepmother made her "brother go in and out of her mom"; he went in and out of her middle area with his middle area. Betancourt testified that Angela told him that, although her back was to them, "she was in the room while her brother had sex with her mom." There was a video made of this incident.

Appellant made another video recording. Betancourt noted in his testimony that appellant was videotaping Cass Brown while he was putting his finger inside Angela's middle area. Angela said that her brother, Adam, had watched the video and had seen her screaming in it. There were several occurrences at various places and times during which Cass Brown put his finger inside Angela. One time when she was being videotaped while she was being sexually abused digitally by Cass Brown, Angela began to bleed, and "they" told her to get a bath. She had to wear a "pad" and stayed home from school the next day because she was still bleeding and the pad was full of blood; blood had also gotten on her panties. While Angela was in the bathtub, she yelled at her dad and stepmother, "Would you stop that, people." Angela was not certain in which residence this particular incident occurred.

After the call to 9-1-1, Adam Green was first interviewed by Betancourt. Adam denied any knowledge of any kind of sexual abuse. Adam began therapy with Melinda Thomas, a licensed professional counselor at Taylor Clinic in Brownwood, on April 23, 2009. She had provided counseling to Angela since January 29, 2009. She stopped counseling with both of them on December 17, presumably in 2009, when they were placed with their mother and stepfather in Chicago.

About six months into Adam's therapy, Thomas felt like Adam was in the process of making an outcry about certain things. He did make an outcry, and as required, Thomas notified Child Protective Services. While she did not normally video her sessions with patients, Thomas set up a time for Adam to come to her office so that a recording could be made of the session.

This occurred on November 19, 2009. The recording was admitted into evidence by agreement and was published to the jury.

During the interview, Adam told the interviewer that, in the beginning of the 2008 school year, he, on more than one occasion, heard Angela screaming at night. He had seen his sister being forced to have sex with Cass Brown and appellant. The first time he saw it, Cass Brown and Angela had no clothes on, and appellant was sitting on the bed while it was happening. Appellant was the main one who did things to him while Cass Brown watched. Adam used dolls to demonstrate the positions of those engaged in the sexual abuse.

There are other instances of sexual abuse about which Angela told Betancourt, but we believe we have detailed any number of such incidents upon which the jury rationally could have based its verdict in this case.

The evidence shows that Angela was a seven- or eight-year-old child when she was first sexually abused by appellant at 902 Bailey Street. She was no more than ten, if not younger, when her father began to sexually abuse her. The evidence shows that appellant and Cass Brown continued to sexually abuse Angela and that they did not stop until sometime between Thanksgiving and Christmas in 2008; Angela was eleven years old at that time. The sexual abuse began at 902 Bailey Street in Brownwood at least by December 20, 2007, when the family moved out of that address. The evidence shows that the sexual abuse continued at 1612 Indian Creek Road, at the lake house during summer 2007, and at 1612 Indian Creek Road through the Thanksgiving season in 2008. That is a period of time in excess of thirty days in duration. We have considered all the evidence in the light most favorable to the verdict. We hold that the jury rationally could have found that each essential element of the charged offense was proven beyond a reasonable doubt. The evidence is sufficient to support appellant's conviction, and her first issue is overruled.

In appellant's third issue, she proposes that the trial court erred when it did not give a jury instruction on the lesser included offenses of aggravated sexual assault of a child, indecency with a child, and sexual performance by a child. There is a two-pronged test to be used to determine if a lesser included offense must be included in the jury charge when requested by a defendant. The first prong, whether an offense is a lesser included offense of the offense alleged by the State, is a question of law and does not depend upon the evidence produced at trial. The pleadings approach is the only test to use to determine the first part of the inquiry into whether a

11

defendant is entitled to a lesser-included-offense instruction. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). The first part of the inquiry is this: Are the elements of the lesser offense included within the proof necessary to establish the offense charged? If so, then we proceed to determine whether some evidence exists in the record that would permit a rational jury to find that, if the defendant is guilty, she is guilty only of the lesser offense. *Id.* at 536; *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981); *Torres v. State*, 343 S.W.3d 297, 304 (Tex. App.—Eastland 2011, pet. ref'd).

Article 37.09 of the Texas Code of Criminal Procedure provides as follows:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. P. ANN. art. 37.09 (West 2006).

When we apply that test, in accordance with the cases we have just cited, we hold that the offenses of aggravated sexual assault of a child, indecency with a child, and sexual performance by a child, as alleged in the indictment in the case before us, are lesser included offenses of the offense of continuous sexual abuse.

We now proceed to the second part of the test: Is there some evidence in the record that would permit a rational jury to find that, if the defendant is guilty, she is guilty only of the lesser offense? Appellant argues that there is some evidence of the lesser included offenses or else the main offense could not have been proven. However, that is not the complete test. "Some evidence" has to be such that would permit a rational jury to find that, if appellant is guilty, she is guilty only of the lesser offense. We have outlined the evidence above and have examined the entire record. We hold that there is no evidence in the record that would permit a jury rationally

12

to find that, if appellant is guilty, she is guilty only of a lesser included offense. Under this record, the lesser included offenses are not valid and rational alternatives to the charge against appellant. *Hall*, 225 S.W.3d at 535–36. Because we do not find error, there is no need for us to address appellant's argument regarding a harm analysis. Appellant's third issue is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT

CHIEF JUSTICE


June 28, 2012

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.