

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00156-CR

———————————————

JOSE GONZALEZCASTILLO, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 485th District Court
Tarrant County, Texas
Trial Court No. 1590792R

---

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant Jose GonzalezCastillo appeals his conviction for continuous sexual abuse of a child under the age of fourteen. *See* Tex. Penal Code Ann. § 21.02(b). In his sole issue on appeal, Appellant argues that the evidence is insufficient to support his conviction. Because we hold that sufficient evidence supports Appellant's conviction, we affirm.

## I. Background

The complainant in this case, Irena, was approximately eighteen months old when Appellant began dating her mother (Mother).[1] Appellant and Mother eventually married, and Appellant helped Mother take care of Irena. Irena and Appellant had a close relationship, and she would refer to him as "Dad" or "Tonio," which was short for Appellant's middle name, Antonio. According to Irena, Appellant began sexually abusing her when she was four years old, which continued until Mother accidentally discovered the abuse in 2018.

### A. The April 27, 2018 Incident

On April 27, 2018, when Irena was seven years old, Appellant picked Irena up from school and took her home. Irena lived at the home with Mother, Mother's three-month-old baby, and Appellant, as well as Appellant's sister (Aunt), her husband, and their two children. After Appellant and Irena arrived at home, Mother stepped into

---

[1]We use aliases to protect the identity of the complainant. *See* Tex. R. App. P. 9.8 cmt., 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

the shower, which was in the bathroom of the master bedroom. While Mother was in the shower, Appellant started touching Irena inappropriately in the master bedroom. Mother called out to Irena from the shower, but Irena did not respond. Mother had a "gut feeling" that she needed to go check on Irena, so she stepped out of the shower without turning the water off. When Mother walked into the bedroom, she saw that Irena's shorts and underwear were down and that Appellant was next to her on the bed. Irena immediately pulled her shorts up with what Mother described as a weird, frozen look on her face. Mother asked Irena what had happened, and Irena responded that Appellant had "licked her burrito," indicating her vagina. When Mother confronted Appellant, he began hitting himself and the walls and calling himself a *pendejo* (a Spanish word meaning "idiot"). Aunt then came into the bedroom and asked what was going on, and she also confronted Appellant after Irena told her what had happened. Appellant did not deny Irena's description of what had happened.

Soon after the confrontation, Appellant left the home. Mother called the police and was instructed to take Irena to the children's hospital for an examination. There, Sexual Assault Nurse Examiner (SANE) Stacey Henley examined a "nervous" and "scared" Irena. Irena told Henley, "My dad was licking my middle part, and then my mom saw, and then they f[ou]ght and they sa[id] a lot of bad words." When Henley asked Irena to clarify who she meant by "dad," Irena said it was "Tonio." Henley also clarified that when Irena referred to her "middle part," she was identifying her vagina. Henley collected Irena's clothing and swab specimens from Irena's outer labia, inner

3

labia, and perineum. That night, forensic examiner Trista Burden of Alliance for Children also interviewed Irena. When asked by both Henley and Burden whether anything had happened before that day, Irena responded that it had never happened before.

The next day, Appellant was interviewed by Sergeant Charles Cisneros with the Arlington Police Department. Although Appellant initially denied any sexual abuse, he eventually admitted that he had placed his tongue on Irena's vagina and said that it had only happened on that single occasion. Appellant's clothing and a buccal swab from Appellant were sent for lab testing along with the samples collected from Irena; the testing later confirmed the presence of male DNA on Irena's outer labia from which Appellant or a close male relative of Appellant could not be excluded.

## B. Other Incidents Eventually Disclosed by Irena

Following the April 27, 2018 incident, Mother and Irena moved out of the home that they shared with Appellant and his family. While this was hard on Irena, she described the move as "a new beginning." After Irena began attending therapy, she told Mother that the April 27, 2018 incident was not the first time that "that had happened." Mother then took Irena back to Alliance for Children to be interviewed a second time by forensic examiner Burden. During this interview, Irena indicated that she had been sexually abused by Appellant more than one time and that it had occurred many times while Mother was at work and while "the baby was in [Mother's]

4

stomach."[2] However, she also deflected many of Burden's questions and described the abuse in the "generic way that it would happen," or by "script memory." For example, Irena explained to Burden that the sexual abuse would always happen on the bed in Mother's room and that Aunt, Aunt's husband, and Irena's cousins would be in another room of the home while it happened. She also described that Appellant would always remove her clothing and place her on her back on the bed and that the door would be shut with the lights turned on.

At trial, Burden testified that, in cases of accidental discovery of child sexual abuse, as here, it is common for the child to initially deny that any abuse had happened or to admit to only the single incident that led to the initial disclosure. Sergeant Cisneros testified that, based on his training and experience, it is common in accidental-discovery cases that subsequent disclosures will reveal the additional instances of sexual abuse—or even chronic abuse—because the initial outcry was not on the child's terms.

## C. Irena's Testimony

Irena was eleven years old by the time she testified at Appellant's trial. Although she was nervous and did not like talking about the abuse because it made her "go[] back" to it, Irena testified that Appellant had done something "inappropriate" to her more than ten times and that it had happened so many times

---

[2]Mother testified that the baby's birthdate was in January 2018, which was when Mother stopped working.

that it was difficult for her to remember them as separate incidents. She stated that the first incident occurred just after the family moved into their home in Arlington; she was "four, almost five" years old.[3] Another incident involving Appellant's touching her with his tongue occurred when her little sister had not been born yet. When asked about the times that Appellant had touched her, Irena stated that Appellant would usually touch her when Mother was at work. Aunt was usually at home either in her room or in the kitchen.

Irena testified that when Appellant "did something inappropriate," he would touch her "middle part" with his hand or his tongue. She explained that by "middle part," she meant the part of her body used for peeing. Appellant would also kiss Irena on the mouth in a way that made her feel uncomfortable and would make her watch pornographic videos that showed men's and women's "middle parts." At other times, Appellant would use his "middle part" to touch her mouth. By Appellant's "middle part," she meant the part of the body that boys use to go to the bathroom. Irena explained that, other than Appellant's "middle part," she had seen a boy's private part only when her cousins would shower or when one of her baby cousins was having his diaper changed.

---

[3]For reference, Mother testified that they moved into the Arlington home in approximately April 2016.

As for the sexual abuse, Appellant would threaten Irena by telling her that police officers kill people who do the things that he had been doing to her, and what "four, five, six, seven-year-old would want" that to happen.

## D. Appellant's Guilty Plea and Trial

Appellant was charged with continuous sexual abuse of a child under the age of fourteen (Count 1), two counts of aggravated sexual assault of a child (Counts 2 and 3), and indecency with a child by contact (Count 4). At trial, Appellant pled guilty to only Count 3, which alleged that he had caused his mouth to contact the sexual organ of Irena on April 27, 2018. Upon the jury's finding of an additional act that had occurred more than thirty days apart from the April 27, 2018 act, the jury found Appellant guilty of Count 1—continuous sexual abuse. The trial court entered judgment on the verdict and sentenced Appellant to 30 years' confinement.

## II. Discussion

Appellant contends that the evidence is insufficient to support his conviction for continuous sexual abuse as alleged in Count 1 because (1) although the evidence supports his guilt on Count 3, the record does not show a second act of sexual abuse, which the State was required to prove to obtain a conviction for continuous sexual abuse, and (2) even if the record does show a second act of sexual abuse, the second act was not clearly more than thirty days removed from the act of sexual abuse in Count 3.

7

The State responds that the evidence shows that Appellant sexually abused Irena repeatedly over the course of several years, including several acts involving Appellant's touching her sexual organ with his mouth or causing his sexual organ to touch her mouth. At a minimum, the evidence shows that the sexual abuse occurred not less than twice—once before the January 2018 date when Mother gave birth to Irena's little sister and stopped working, and once on April 27, 2018, which are acts of abuse more than thirty days apart.

## A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative

8

force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

**B. Applicable Law**

A person commits continuous sexual abuse of a child if, (1) "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse"; (2) the person is seventeen years of age or older when committing each act of sexual abuse; and (3) the victim is a child younger than fourteen years of age. Tex. Penal Code Ann. § 21.02. For purposes of this statute, "acts of sexual abuse" include sexual assault under Penal Code Section 22.011; aggravated sexual assault under Penal Code Section 22.021; and indecency with a child under Penal Code Section 21.11(a)(1). *Id.* Acts of sexual abuse therefore include intentionally or knowingly "caus[ing] the penetration of the anus or sexual organ of a child by any means," *id.* § 22.011(2)(A); intentionally or knowingly "caus[ing] the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the [person]," *id.* § 22.021(B)(iii); and touching any part of the child's genitals if committed with the intent to arouse or gratify the sexual desire of any person, *id.*

9

§ 21.11(c)(1). "The testimony of a child sexual abuse victim, alone, can be sufficient to support a conviction for continuous sexual abuse of a child." *Brockman v. State*, No. 02-18-00327-CR, 2019 WL 4048872, at *1 (Tex. App.—Fort Worth Aug. 28, 2019, pet. ref'd) (mem. op., not designated for publication) (citing Tex. Code Crim. Proc. Ann. art. 38.07).

"Although the exact dates of the acts of sexual abuse need not be proven, the offense of continuous sexual abuse of a child requires proof that one act of sexual abuse occurred on at least the 29th day after the day of another act of sexual abuse." *Lawson v. State*, No. 02-17-00201-CR, 2018 WL 1192478, at *4 (Tex. App.—Fort Worth Mar. 8, 2018, no pet.) (per curiam) (mem. op., not designated for publication). The jury, however, is "not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." *Id.*

In cases of continuous sexual abuse, the trier of fact is entitled to "fit[] the pieces of the jigsaw puzzle together and weigh[] the credibility of each piece." *Flowers v. State*, 220 S.W.3d 919, 923 (Tex. Crim. App. 2007); *see Minnis v. State*, No. 02-20-00027-CR, 2021 WL 62127, at *6 (Tex. App.—Fort Worth Jan. 7, 2021, no pet.) (mem. op., not designated for publication). For example, the jury may piece together the timeframe of the abuse from testimony concerning a child's likely milestones, such as school years, the child's age, seasons, and places where the child lived. *See, e.g., Hernandez v. State*, No. 05-17-00560-CR, 2018 WL 2316026, at *4 (Tex. App.—Dallas

10

May 22, 2018, pet. ref'd) (mem. op., not designated for publication) ("While the girls were unable to provide specific dates for when the abuse occurred, they referred to the sexual abuse occurring at different houses[,] and their mother was able to provide a timeline of when they resided at those houses."); *Lawson*, 2018 WL 1192478, at *5 (relying on testimony associating the abuse with school years, seasons, and holidays to hold the evidence sufficient despite lack of specific dates); *Michell v. State*, 381 S.W.3d 554, 561–64 (Tex. App.—Eastland 2012, no pet.) (upholding continuous sexual abuse conviction based on proof tying the abuse to different school years, holidays, seasons, and homes that the child complainant lived in over time).

## C. Analysis

The jury had sufficient evidence from which it could piece together a timeline sufficient to show that Appellant committed at least two acts of sexual abuse more than thirty days apart. *See Flowers*, 220 S.W.3d at 923; *Ruiz v. State*, Nos. 02-22-00107-CR, 02-22-00108-CR, 2023 WL 4007427, at *3 (Tex. App.—Fort Worth June 15, 2023, no pet. h.) (mem. op., not designated for publication).

Irena testified that Appellant sexually abused her at least ten times beginning when she was four years old and that it happened at least once when Mother was pregnant and still working. Appellant asserts that Irena's testimony is "inconclusive" because, other than the April 27, 2018 incident during which he touched her vagina with his mouth, the "other contacts" she described involved his touching her with both his hand and his tongue, kissing her on the lips, and causing his penis to touch

her mouth. Appellant contends that the jury could only "speculat[e]" about these other incidents and that the record is unclear about the timing of the alleged second act that occurred while Mother was pregnant and still working, particularly when the indictment alleged that the continuous offense occurred from January 1, 2018, to April 27, 2018.

Appellant's contentions are wrong for several reasons. First, "[t]he primary purpose for specifying a date in an indictment is to show that the prosecution is not barred by a statute of limitations." *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd) (citing *Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998)). But because continuous sexual abuse has no period of limitations, the State is not bound by that date. *See* Tex. Code Crim. Proc. Ann. art. 12.01(1)(D). Rather, the jury may rationally infer that the date range element has been met even if the sexual-abuse evidence exceeds the scope of the indictment. *See Fernandez v. State*, No. 01-21-00541-CR, 2023 WL 3742350, at *7 (Tex. App.—Houston [1st Dist.] June 1, 2023, no pet. h.) (mem. op., not designated for publication) (stating that in a continuous sexual abuse case, "[i]f evidentiary facts regarding the alleged abuse exceed the date range in the indictment, that testimony can be considered to show the continuous nature of the abuse" (quoting *Moreno v. State*, 619 S.W.3d 754, 759–60 (Tex. App.—San Antonio 2020, no pet.))); *Kuhn v. State*, 393 S.W.3d 519, 525–29 (Tex. App.—Austin 2013, pet. ref'd).

Second, Irena was not required to provide specific dates of when the sexual abuse occurred. *See* Tex. Penal Code Ann. § 21.02(d); *Dixon v. State*, 201 S.W.3d 731,

12

736 (Tex. Crim. App. 2006) ("Especially where young children are involved, . . . courts cannot impose unrealistic expectations regarding proof of when an offense actually occurred[.]"). Indeed, the Court of Criminal Appeals has noted that the Legislature created the offense of continuous sexual abuse to "adapt [the Penal Code] to the common factual scenario of an ongoing crime involving an abusive sexual relationship of a child." *Price v. State*, 434 S.W.3d 601, 607 (Tex. Crim. App. 2014) (quoting *Dixon*, 201 S.W.3d at 737 (Cochran, J., concurring)); *see Baez*, 486 S.W.3d at 595 ("The Texas Legislature 'created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse.'" (quoting *Michell*, 381 S.W.3d at 561)).

Lastly, because "[c]ourts give wide latitude to testimony given by a child victim of sexual abuse," Irena was not required to provide a precise description of what happened to her. *See Mannie v. State*, No. 02-08-224-CR, 2009 WL 2196135, at *1 (Tex. App.—Fort Worth July 23, 2009, no pet.) (per curiam) (mem. op., not designated for publication) (citing *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990)). Nor was she "expected to testify at the same level of sophistication as an adult." *See id.* (citing *Villalon*, 791 S.W.2d at 134).

Irena testified that the sexual abuse happened so many times that she could not remember each separate event. But she remembered enough of the sexual abuse to testify that Appellant, on at least ten occasions, touched her "middle part"—her

13

vagina—with his mouth and caused her mouth to touch his "middle part"—his penis. She also provided references through her testimony to the timeframe during which the sexual abuse occurred. *See Ruiz*, 2023 WL 4007427, at *5; *cf. Clark v. State*, No. 02-19-00131-CR, 2020 WL 5949925, at *4 (Tex. App.—Fort Worth Oct. 8, 2020, no pet.) (mem. op., not designated for publication) (reversing conviction when child's testimony did not provide "any guideposts for when the abuse occurred that would allow [the court] to conclude, without speculating, that the first and last instances of abuse [had] occurred at least thirty days apart"). Specifically, Irena testified that the sexual abuse began just after moving into the home in Arlington, that she was four years old when it started, that Appellant had told her that the police would kill him for doing those things to her when she was a "four, five, six, seven-year old," that the sexual abuse would always occur in Mother's bedroom in the Arlington home, that the sexual abuse would always occur when Mother was at work, and that at least one act had occurred while Mother was pregnant and still working.

If the jury accepted Irena's testimony, as it apparently did, then it could have found from the evidence that she had described at least two acts of abuse that occurred more than thirty days apart—at a minimum, the act on April 27, 2018, and at least one act before Mother gave birth and stopped working in January 2018. Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Appellant had committed at least two acts of sexual abuse thirty days or more apart. *See Queeman*, 520 S.W.3d at 622; *Ruiz*,

14

2023 WL 4007427, at \*5; *see also Brown v. State*, No. 05-19-00597-CR, 2020 WL 4034964, at \*6 (Tex. App.—Dallas July 17, 2020, no pet.) (mem. op., not designated for publication) (holding that complainant's testimony that she was in fourth grade when one act of sexual abuse occurred and was in fifth grade when another occurred was evidence that the jury could consider in finding that the acts were thirty days or more apart); *Machado v. State*, No. 02-15-00365-CR, 2016 WL 3962731, at \*3 (Tex. App.—Fort Worth July 21, 2016, pet. ref'd) (mem. op., not designated for publication) ("[T]he record contains evidentiary puzzle pieces that the jury could have carefully fit together to rationally find beyond a reasonable doubt that appellant's sexual abuse of [the complainant] occurred over a period of thirty days or more."). Accordingly, we overrule Appellant's sole issue.

### III. Conclusion

Having overruled Appellant's sole issue on appeal, we affirm the trial court's judgment of conviction.

/s/ Wade Birdwell
Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 10, 2023

15