

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00232-CR

———————————————————

PATRICK MICHAEL FLOYD, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1634530

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

A jury convicted Appellant Patrick Michael Floyd of the offense of continuous sexual abuse of a child under the age of fourteen. *See* Tex. Penal Code Ann. § 21.02(b). The jury assessed punishment at twenty-five years' confinement, and the trial court sentenced him accordingly. In his sole issue, Floyd challenges the sufficiency of the evidence supporting his conviction. We affirm.

## I. BACKGROUND

The complainant, Kristen,[1] moved from Georgia to Texas with her mother and siblings sometime in 2014 when she was around eight years old. In the summer of 2017, Kristen's mother and Floyd met at work and began dating. In March 2018, after eight to nine months of dating, Floyd moved into Mother's apartment with her and her children, and a year later, they all moved into a house. Mother and Floyd did not have the same work schedule so Floyd would sometimes be home alone with the children.

Kristen testified at trial that the first incident with Floyd occurred while they lived in the apartment. She said that she was in bed with her brother and Mother when Floyd returned to the apartment after work. Kristen recalled that Floyd had gotten into bed beside her, put his hand inside of her gown, and touched her thigh making her feel uncomfortable. Kristen then described another incident where she

---

[1]To protect the child's identity, we use an alias to refer to her. *See* Tex. R. App. P. 9.10(a)(3).

was in Mother's bed watching television, and Floyd pulled down her pants and underwear and touched her vagina with his mouth. Kristen said that Floyd had also touched her with his hands on the "outside" of her vagina and that he had tried to touch her on the "inside." Kristen testified that Floyd had touched her vagina with his hand on multiple occasions while Mother was at work.

Kristen further testified about another time at the apartment when she was in the living room, and Floyd put a blanket over her and began touching her vagina with his hand while watching pornography on his phone. She described how he had mainly touched the outside of her vagina, but he had also tried to "go on the inside." Kristen again emphasized that there had been multiple times that Floyd touched her vagina while they lived in the apartment. She detailed another time when she stayed home from school because Floyd had told Mother that she was sick. On that day, Floyd touched her "all day" with his hands and his penis. Kristen explained how Floyd had taken off his pants and underwear and had her lay on his stomach while he touched her vagina and butt with his penis. She described that Floyd had tried to touch her "inside" her vagina with his penis but that he stopped when she told him that it hurt. Kristen testified that Floyd had also "touched himself until white stuff came out" and that he had "wipe[d]" it on her.

Kristen also testified to acts Floyd committed after they moved into the house in February or March of 2019. For example, Kristen said that when they lived in the house, Floyd had her touch his penis with her hand and with her mouth.

3

In March 2019, Kristen tried to harm herself by taking some of Mother's pills. Kristen testified that she had taken the pills because she "didn't want to be here [anymore]" because of what Floyd had been doing to her. Mother took Kristen to the hospital, and according to Kristen, while she was in the hospital, Floyd told her not to tell anyone that he had touched her. Kristen stated that after she was released from the hospital, Floyd continued to touch her vagina with his hands and his penis. She also said that there had been multiple times when Floyd put her on his stomach and tried to put his penis in her butt, but he would stop when she said it hurt.

In the summer of 2019, Kristen went to stay with her father in Georgia. While she was there, she told her grandmother what had happened with Floyd, but she did not go into detail. Her grandmother related the information to Kristen's aunt, who then called and told Mother about the allegations. Mother testified that she had been in shock and that she had asked Floyd about it. According to Mother, Floyd was shocked by the allegation and said he would never do something like that.

At the end of Kristen's visitation with Father, Floyd drove Mother to Georgia to bring Kristen back to Texas. Kristen was very upset when she saw Floyd, but Mother told her she would handle it when they got home. After they arrived home, Mother told Floyd he had to move out of the house. He packed up and left that day. Kristen testified that after that summer, nothing else ever happened with Floyd.

Kristen returned to Georgia in December 2019 for Christmas break. She told Father that Floyd had been "touching on" her. Father testified that Kristen had said

4

Floyd would have her touch his penis. She also told Father that Floyd had touched her vagina and had shown her pornography. Father called the police in both Texas and Georgia to report the allegations. He took Kristen for a forensic interview at a children's advocacy center in Georgia, as well as a SANE examination conducted by Dr. Kevin Allen. After an investigation by the Fort Worth Police Department, the detective on the case obtained a warrant for Floyd's arrest.

Floyd was indicted on one count of continuous sexual abuse of a child under the age of fourteen, five counts of aggravated sexual assault of a child younger than fourteen, and two counts of indecency with a child. The jury charge followed the indictment and set out each of the eight counts in separate paragraphs. Having found Floyd guilty of continuous sexual abuse of a child under the age of fourteen set out in paragraph one, the jury was instructed not to consider the remaining paragraphs two through eight.

## II. SUFFICIENCY OF THE EVIDENCE

In our evidentiary-sufficiency review, we view all evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 593, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

## III. DISCUSSION

In his sole issue, Floyd argues that the evidence is insufficient to support his conviction for continuous sexual abuse of a young child. A person commits the offense of continuous sexual abuse of a young child if:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

6

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is:

    (A) a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

Tex. Penal Code Ann. § 21.02(b).

Floyd concedes that the "evidence is legally sufficient to prove that [he] committed the offense[s] of aggravated sexual assault of a child and indecency with a child." He argues, however, that "at no point did the State prove that the sexual abuse continued for thirty or more days in duration."

The indictment alleged that Floyd committed two or more acts of sexual abuse on or about March 18, 2019, through July 1, 2019. Although the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child requires proof that there were two or more acts of sexual abuse that occurred during a period that was thirty days or more in duration. *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.). Floyd does not argue that there is no evidence of two or more acts but, rather, contends that because any evidence that he abused Kristen for more than thirty days was speculation, the State did not prove this element of the offense.

While we agree with Floyd that there was no evidence of exactly when the abuse began or ended, we disagree that there was insufficient evidence to prove that the abuse occurred for a period of thirty days or more as required by Section 21.02(b).

According to Mother, Floyd moved into the apartment with her and her children sometime around March 2018. Kristen testified that Floyd had sexually abused her multiple times while they lived in the apartment. Kristen also testified that during a specific act of sexual abuse, Floyd ejaculated and wiped it on her. Dr. Allen, who performed Kristen's SANE examination, testified that she had told him that Floyd ejaculated on her in December 2018.

Kristen further testified that the sexual abuse continued after the family moved into the house in February or March of 2019. She also stated that the sexual abuse had occurred before she attempted to harm herself in March 2019 and that it continued after that date. Kristen reported to Dr. Allen that the last act of sexual abuse happened in May 2019.

Viewing all the evidence in the light most favorable to the verdict, the record contains evidentiary puzzle pieces that the jury could have carefully fit together to rationally find beyond a reasonable doubt that Floyd's sexual abuse of Kristen occurred over a period of thirty days or more. *See Flowers v. State*, 220 S.W.3d 919, 923 (Tex. Crim. App. 2007) ("The trier of fact fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece."); *Machado v. State*, No. 02-15-00365-CR, 2016 WL 3962731 at *3 (Tex. App.—Fort Worth July 21, 2016, pet. ref'd) (mem. op., not designated for publication). While there was no evidence of exactly when the abuse began, the jury heard evidence that Floyd sexually abused Kristen on more than one occasion while they lived in the apartment—March 2018 until February or March of

8

2019—and also while they lived in the house—March 2019 until Floyd moved out at the end of the summer in 2019. Dr. Allen's testimony provided evidence that an act of abuse occurred in December 2018 and also in May 2019, a period of more than thirty days in duration. We conclude that the jury could have rationally found beyond a reasonable doubt that Floyd's sexual abuse of Kristen occurred during a period that spanned thirty days or more. *See Machado*, 2016 WL 3962731 at *3. We overrule Floyd's sole issue on appeal.

## IV. CONCLUSION

Having overruled Floyd's sole issue, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 27, 2024