

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00129-CR

———————————————

RUEBEN Q. CARREON, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1584574

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant Rueben Carreon appeals his convictions for three counts of aggravated robbery and one count of burglary of a habitation. *See* Tex. Penal Code Ann. §§ 29.03(a)(2), 30.02(a). In three points on appeal, Carreon argues that (1) the evidence is insufficient to support his convictions, (2) the trial court erred by combining the deadly weapon issues on four counts into a single special issue, and (3) the State made an improper jury argument. We affirm.

## I. Background

The Najar family—Daniel Sr., Esther, and their sons, Daniel Jr. and Jonathan—were at their home when two men entered. Daniel Jr. and Esther were in the living room when the men entered, Jonathan was in the kitchen, and Daniel Sr. was in another room. Daniel Jr. testified that one of the men was wearing a black hoodie and the other was wearing a dark gray hoodie. Both Daniel Jr. and Esther stated that the hoodies were tied tightly so that they could not see the men's faces.

Daniel Jr. testified that the men pointed a gun at his face and told him to get down on the ground. The men then threw Daniel Jr. and Esther on the ground. Daniel Sr. entered the room, and the men threw him on the ground as well. The men searched Daniel Jr. and took his wallet.

Esther sells jewelry from her home, and the men were asking, "Where is the gold?" According to Esther, Daniel Sr. told her to tell the men where the gold was located, but she refused. The men then searched the bedroom where Esther kept her

2

jewelry. Esther testified that she had approximately $70,000 worth of jewelry and around $2,000 in cash. The men covered Daniel Jr., Esther, and Daniel Sr. with a mattress and told them to count to 100 before getting up. Daniel Jr. heard the family dogs barking and believed the men left through the back of the house.

Jonathan was in the kitchen when the men entered the home. He heard them shout in Spanish, "Get down, get down," and he heard his mother screaming. Jonathan was able to leave through the back door and call the police. The police arrived very quickly because they were already in the area. Jonathan testified that when the police arrived at the scene, they saw a person coming from the alley wearing a black hoodie and chased after him.

Officer Tonya Clapp testified that she responded to a call concerning a home invasion which meant that a weapon was involved. Officer Clapp and another officer were approximately one minute away from the Najar home when they received the call. Jonathan told the officers that there were two men in the home who had guns. As she was talking to Jonathan, Officer Clapp saw two men wearing dark clothing jump over the Najars' back fence. The two officers began chasing the men, but the men split up, so they pursued the one closest to them. Officer Timothy Trull arrived on the scene, and Officer Clapp pointed to the man running. Officer Trull ran after the suspect on foot and stated that the suspect ran through backyards and jumped two fences before Officer Trull was able to apprehend him. Officer Trull identified Carreon as the person he caught.

Officer Trull testified that he searched Carreon and found a large amount of jewelry, a large amount of cash, and a wallet containing Daniel Sr.'s driver's license. Officer Trull also found a manilla envelope with Esther N. written on it as well as Esther's social security card. Officer Clapp testified that a black bag containing jewelry was found in a tree near where Carreon was apprehended, and jewelry was also found below the tree.

Anna Perez, Carreon's former girlfriend, testified that her mother had dated Esther's son. According to Perez, Carreon had previously been to the Najars' home with her and knew that Esther sold jewelry. Perez testified that Carreon called her from jail and asked her to pick up a black bag somewhere in his mother's backyard. Carreon told Perez that he wanted her to take the bag somewhere and get money for it. Perez told Carreon that she did not want to get involved.

Carreon testified at trial that he lived with his mom, and the record indicates that her house was near the Najars' home. Carreon said on the day of the offense, he was outside his mother's house waiting for a co-worker to pick him up for work. Carreon started walking toward the street corner when he saw someone wearing a gray sweater throw something into a tomato box and run away. Carreon was "pretty excited" when he looked into the box and found money and jewelry, and he put the money and jewelry into his pockets. After he put the items in his pockets, Carreon started back to his mother's house. According to Carreon he initially did not see any police officers or hear a police officer telling him to stop, but after he jumped the

4

fence at his mother's backyard, he heard a police officer tell him to get on the ground. He complied with the officer's commands. Carreon believed that it was a "bait trap" where police officers put the items there in order to catch thieves.

Carreon testified that he had never been in the Najars' home and that he did not know Esther sold jewelry from the home. He further testified that he did not call Perez from jail and ask her to retrieve a bag from his mother's backyard, but she came to the jail to visit him and threatened him.

The jury found Carreon guilty and assessed his punishment at 60 years' confinement on each of the three counts of aggravated robbery and also 60 years' confinement on the burglary of a habitation count. The trial court sentenced Carreon accordingly and ordered that the sentences run concurrently. This appeal followed.

## II. Sufficiency of the Evidence

In his first point, Carreon argues that the evidence is insufficient to support his convictions for aggravated robbery and burglary of a habitation.

## A. Standard of Review

In our evidentiary-sufficiency review, we view all evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex.

5

Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 593, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

**B. Analysis**

Carreon specifically argues that the evidence is insufficient to establish his identity as one of the perpetrators of the offenses. He contends that the record contains a mere "modicum" of evidence probative of an element of his identity as a perpetrator of the offense, citing *Brown v. State*, 381 S.W.3d 565, 573 (Tex. App.—Eastland 2012, no pet). The State may prove identity through direct or circumstantial evidence and through inferences. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009).

Daniel Jr. identified one of the intruders as wearing a black hoodie. The officers arrived quickly on the scene and saw two men leaving from the Najars' backyard wearing dark clothing. The officers pursued one of the men, who was

6

identified as Carreon, and were able to apprehend him. Carreon had a large amount of jewelry and money in his pockets as well as personal items belonging to the Najars at the time of his arrest. Officer Trull and Officer Clapp both briefly lost sight of Carreon during the pursuit, but Officer Clapp testified that she did not believe it was possible that the person apprehended, Carreon, was not the person she saw running from the Najar residence. Although Carreon testified that he did not commit the offenses and that he found the jewelry and money, the jury judges the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin*, 635 S.W.3d at 679. We hold that a reasonable jury could have concluded that Carreon committed the offenses of aggravated robbery and burglary of a habitation. We overrule the first point.

### III. Jury Charge

In his second point, Carreon argues that the trial court committed charge error by combining the deadly weapon issues on four counts into a single special issue. The charge included a special issue that defined deadly weapon and then stated,

> Do you find it 'true' beyond a reasonable doubt that a deadly weapon, to wit: a firearm, that in the manner of its use or intended use was capable of causing death or serious bodily injury, was used or exhibited during the commission of the felony offenses of aggravated robbery with a deadly weapon and/or burglary of a habitation, and that the [appellant] used or exhibited a deadly weapon?

The jury answered, "We do." Carreon specifically argues that the trial court violated his constitutional right to a unanimous verdict guaranteed by the Sixth Amendment to

7

the United States Constitution and Article V, Section Thirteen of the Texas Constitution.

## A. Preservation of Error

Jury charge complaints need not be preserved with an objection and may be raised for the first time on appeal. *Garcia v. State*, No. 02-21-00203-CR, 2022 WL 17173127, at *2 (Tex. App.—Fort Worth Nov. 23, 2022, pet. ref'd) (mem. op., not designated for publication). Whether a defendant objects to the charge merely determines which harm analysis a reviewing court undertakes if it finds the charge to be erroneous. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994).

In contrast, constitutional due process complaints must be preserved by an objection at trial. *See Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) ("Indeed, our prior decisions make clear that numerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved."); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (holding that defendant was required to object at trial that his constitutional right to due process was violated in order to preserve the issue for appeal); *see also Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (noting that "almost all error—even constitutional error—may be forfeited if the appellant failed to object"). Thus, by failing to raise a constitutional due process complaint in the trial court, a defendant forfeits appellate review of the issue. *See Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012).

Here, Carreon did not object to the jury charge and did not raise a constitutional due process objection at trial; therefore, he has forfeited the right to appeal his conviction on this basis. *See id.*; *see also Anderson*, 301 S.W.3d at 280; *Briggs*, 789 S.W.2d at 924; *Garcia*, 2022 WL 17173127, at *2.

Moreover, assuming that Carreon had preserved his complaint, we must overrule it on the merits. Because Carreon did not object to the jury charge, egregious harm is required for reversal. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

Carreon was charged in Counts 1 through 3 with aggravated robbery. Each of those counts included an allegation that Carreon "used or exhibited a deadly weapon, namely a firearm." A trial court is required to enter an affirmative deadly weapon finding where the jury has found guilt as alleged in the indictment and the deadly weapon has been specifically pleaded in the indictment. *Vasquez v. State*, 56 S.W.3d 46, 47 (Tex. Crim. App. 2001); *Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985). In three separate verdict forms, the jury found Carreon guilty of aggravated robbery as charged in the indictment. In addition, the application paragraphs for each of the aggravated robbery counts required the jury to find that Carreon used or exhibited a deadly weapon, namely a firearm. Therefore, the jury verdict was unanimous as to the three counts of aggravated robbery, and the trial court correctly entered an affirmative deadly weapon finding as to those counts.

9

In *Nawaz v. State*, the court noted that "[a]lthough the better practice may have been for the trial court to include a separate deadly weapon special issue for each separate count, appellant provides no authority for his argument that the trial court was required to submit a separate special issue for each count." No. 05-19-00092-CR, 2021 WL 1884551, at *15 (Tex. App.—Dallas May 11, 2021) (mem. op., not designated for publication), *rev'd in part on other grounds*, 663 S.W.3d 739, 748 (Tex. Crim. App. 2022). As in *Nawaz*, Carreon has not shown that he was egregiously harmed by any error. *Id.*

An affirmative deadly weapon finding has a negative impact on a defendant's eligibility for community supervision, parole, and mandatory supervision. *Sierra v. State*, 280 S.W.3d 250, 254 (Tex. Crim. App. 2009); *see* Tex. Gov't Code Ann. §§ 508.145, .149, .151; Tex. Code Crim. Proc. Ann. art. 42A.054(b). Because we conclude that the trial court correctly entered an affirmative deadly weapon finding as to Counts 1 through 3—and those sentences run concurrently with Count 4, burglary of a habitation—the affirmative deadly weapon finding as to Count 4 does not affect Carreon's eligibility for community supervision, parole, and mandatory supervision. Carreon has not shown he was egregiously harmed by any error. We overrule his second point.

## IV. Jury Argument

In his third point, Carreon argues that the State's improper jury argument was egregious and harmful. During his closing argument, Carreon's counsel commented

10

on Perez's testimony and noted that the State could have produced a recording of the call from the jail as evidence. The State responded during its final argument:

> So I cannot believe that they can stand up here and say that there's reasonable doubt in this case. We brought you everything. And Defense counsel knows because he told you 'I've worked for this office' several times throughout this trial. . . . He knows that we don't record jail calls. It's disingenuous for him to get up here and lie to you. So I want you to think about that.

Carreon's counsel did not object to the State's argument.

## A. Permissible Jury Arguments

To be permissible, the State's jury argument generally must fall within one of the following four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011).

## B. Standard of Review

Improper jury argument is reviewed under a nonconstitutional harm analysis. *See* Tex. R. App. P. 44.2(b). Even if a jury argument exceeds the permissible bounds, we will not reverse a trial court's erroneously overruling a defense objection unless the error affected the defendant's substantial rights. *Id.*; *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). In determining whether substantial rights

were affected, we consider (1) the severity of the misconduct (that is, the prejudicial effect of the prosecutor's remarks), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Freeman*, 340 S.W.3d at 728.

## C. Preservation of Error

We must first address whether Carreon has preserved his complaint. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). These preservation requirements apply to complaints of improper jury argument. *See Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018) ("The right to a trial untainted by improper jury argument is forfeitable."); *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004) (holding that because appellant did not object to complained-of jury argument, he "failed to preserve error"). Indeed, erroneous jury argument, even if "incurably improper," is forfeited unless the complaining party objects at the time of the argument and pursues the objection to an adverse ruling. *Hernandez*, 538 S.W.3d at 623.

Carreon acknowledges that he did not object to the improper argument but argues that because the argument was so egregious and harmful, this court should

review the argument. Even "incurably improper" jury argument is forfeited without a proper objection. *See id.* Because he failed to object to the State's argument, Carreon has not preserved this complaint for review. *Id.* We overrule Carreon's third point.

## V. Conclusion

Having overruled Carreon's three points on appeal, we affirm the trial court's judgments.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 8, 2024